[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 1, 2002
THOMAS K. KAHN
CLERK

No. 00-16087

_____

D. C. Docket No. 98-02275 CV-PCH

CHRYSLER INTERNATIONAL CORPORATION,
a Delaware corporation,

                                        Plaintiff-Appellant,

        versus

JOHN CHEMALY, individually,
MICHAEL DEL MARMOL, individually, et al.

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 1, 2002)**

Before EDMONDSON and CARNES, Circuit Judges, and MUSGRAVE*, Judge.

_____

•   Honorable R. Kenton Musgrave, Judge, U.S. Court of International Trade, sitting by
    designation.

EDMONDSON, Circuit Judge:

In the past, Appellant Chrysler International Corporation brought suit, in federal district court in Michigan, against Appellees John Chemaly, Michael del Marmol, and Cherokee Export Company ("CEC") over a dispute arising out of an automobile distribution contract. Chrysler, in the earlier case, obtained a judgment against CEC. The case now before us is a separate, follow-on suit. In this case, Chrysler sought to pierce the corporate veil and to hold Chemaly and del Marmol personally liable for the earlier judgment. The jury found in favor of Chemaly and del Marmol. Chrysler appeals, challenging the district court's rulings on admissibility of several pieces of evidence and challenging the court's rulings on the issue of laches. We affirm.

## DISCUSSION

- Chrysler's Deposition in South Africa

Chrysler argues that the district court erred in issuing a protective order preventing it from deposing Archie Sinclair. Sinclair owned the company to which some of the automobiles involved in the Michigan litigation were sold. Del Marmol testified that Sinclair had not paid for the automobiles and that Sinclair

2

claimed the automobiles were defective. Chrysler, on the other hand, claimed that Sinclair had always maintained that he had paid for the automobiles but that the funds had been diverted into Defendants' personal accounts.

Because Sinclair lived in South Africa, Chrysler asked the district court for a letter of request[1] to obtain Sinclair's testimony for use at trial:[2] what Chrysler calls a *de bene esse* deposition.[3] The district court granted the request, but set a deadline for its taking: specifically warning the parties that "the pendency of [South Africa's] decision whether to execute the letter of request and the execution thereof" would not serve to extend the discovery deadline.

Chrysler moved for the letter of request on 4 January 2000, about fifteen months after filing this lawsuit. The motion was granted on 20 January. When the letter of request was issued by the district court, the discovery period was

---

[1]The letter of request in this case was a request, sent by the district court to the South African Department of Justice, seeking to have the proper South African authorities summon Sinclair "to give testimony under oath by question and answers upon oral deposition." According to the request, the questioning was to have been done by Chrysler's lawyers and their designated South African representatives. The district court also requested that defendants' lawyers be allowed to ask questions if they were present.

[2]Federal Rule of Civil Procedure 32(a)(3)(B) states that a deposition can be used for "any purpose" where the witness is more than 100 miles from the place of the hearing or outside of the United States.

[3]The phrase "*de bene esse*" does not appear in the Federal Rules of Civil Procedure. For depositions, we understand the phrase to mean depositions that may be used at trial if the witness is unable to attend the trial.

scheduled to end on 4 February.  The trial was itself already set for 3 July.  The district court later extended the discovery period several times: the final discovery deadline was 25 April.  The South African authorities, however, did not execute the letter of request until 28 April and scheduled the deposition for 6 June: less than a month before the trial was then scheduled to begin (on 22 June, the district court -- acting *sua sponte* -- rescheduled the start of trial for October 2000).

Upon learning that the deposition had been scheduled outside of the 25 April discovery deadline, Defendants moved for a protective order to prevent Chrysler from taking the deposition.  The district court granted the protective order.  When Chrysler's motion for reconsideration was denied, Chrysler took the deposition anyway.  But, when Chrysler sought to introduce the deposition testimony at trial, the district court would not allow it.

At the heart of this case is the authority of the district court to control the pace of litigation before it.  At the outset, we stress the broad discretion district courts have in managing their cases.  See Johnson v. Bd. of Regents of Univ. of Georgia, 263 F.3d 1234, 1269  (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling.").  Given the caseload of most district courts and the fact that cases can sometimes stretch out over years, district courts must have discretion and authority

4

to ensure that their cases move to a reasonably timely and orderly conclusion. Cf. Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1998) ("We recognize the time pressures that the federal district courts face because of crowded dockets. . ..").  This discretion is not wholly unfettered, see Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997); but it is and must be broad.

Evidentiary rulings and the entry of a protective order are likewise subject to review for abuse of discretion.  See Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers, 87 F.3d 1242, 1245 (11th Cir. 1996); Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp., 37 F.3d 1460, 1463 (11th Cir. 1994).  Chrysler argues that the district court abused its discretion in granting the protective order because -- Chrysler says -- a difference exists between a discovery deposition and a *de bene esse* deposition.  Chrysler argues that discovery deadlines cannot apply to the latter.

Chrysler's reliance on Charles v. Wade, 665 F.2d 661 (5th Cir. Unit B 1982),[4] is misplaced.  Chrysler is correct that the Charles court saw an abuse of discretion in the trial court's denial of a request to take, after the discovery

---

[4]In Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982), we adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after 30 September, 1981.

5

deadline, a deposition of testimony for use at trial. But the facts of <u>Charles</u> are materially different from this case.[5] So, we are not being asked to follow <u>Charles</u>; we are being asked to extend <u>Charles</u> to different circumstances. In <u>Charles</u>, the reason given by the district court for denying permission to take the deposition was simply that the discovery period had closed. <u>Id</u>. at 664. Nothing in <u>Charles</u> suggests that the plaintiff delayed in setting the deposition of a known witness. Also, at no time before the discovery period had closed had the district court in <u>Charles</u> given any indication to the parties that it intended to treat all depositions -- whether for discovery or for use at trial -- in the same fashion for timing purposes. In addition, the potential deponent in <u>Charles</u> was an incarcerated prisoner in an immediately adjoining state, not -- as here -- a free businessman located on a different continent.

In this case, Chrysler did delay in acting -- by moving for the letter of request more than a year after filing this lawsuit -- to obtain the testimony of Sinclair in a form usable at trial. The trial date was set. And as the district court noted in its order granting the letter of request, Chrysler had known that Sinclair

---

[5]"[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." <u>Cohens v. Virginia</u>, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.) Furthermore, "[t]here is, of course, an important difference between the holding in a case and the reasoning that supports that holding." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 585 (1998).

resided on a different continent and had known of the importance of Sinclair's testimony for some time: "as early as August 1999."[6]

Because the district court, before the discovery deadline expired, warned the parties that all depositions -- including the potential South Africa deposition -- would be subject to the discovery deadline, the issuance of the later protective order should have come as no real surprise to Chrysler. When the district court granted permission to Chrysler to take the deposition in South Africa, the district court had stated its intention to place a limit on the date by which the deposition could be taken. The initial order granting the letter of request stated that the pendency of the execution of the letter would not serve to extend the discovery deadline: a clear indication that the South African deposition would be barred if not taken before the time set for the end of discovery.[7] Moreover, in the order (dated 17 March 2000) in which it granted its last extension of the discovery

---

[6]Chrysler's claim that it moved for the letter of request as soon as it learned Sinclair would not appear at the trial voluntarily is not compelling. The district court found that Chrysler was aware of Sinclair's involvement in this case as "likely prior to the commencement of this action." That Chrysler knew of the importance of Sinclair's testimony for a considerable time before it moved for the letter of request is clear, and Chrysler should have known of the inherent difficulties and uncertainties of getting a witness who lives halfway around the world to testify at trial at a specific time in the future. The district court did not err in finding that Chrysler should have acted sooner.

[7]We do not suggest that the district court's discretion is limited to imposing the discovery deadline as the deadline for the taking of all depositions. The district court would have been within its power to impose a different deadline for the deposition Chrysler sought to take. But the point is that it was no automatic abuse of discretion for the district court to set the deadline that it did: to adopt the discovery deadline as the deadline for the South Africa deposition.

period, the district court explicitly warned the parties of the importance of the deadlines imposed by the court and noted that an appropriate sanction for violation of the discovery deadline would include "striking witnesses deposed or *testimony obtained* outside the discovery period." (emphasis added). This language is also a clear indication that the district court was treating the so-called *de bene esse* deposition as subject to the same deadline as all other depositions.

Chrysler on appeal does not argue that the district court abused its discretion in not again extending the discovery deadline. Instead, Chrysler asserts on appeal -- as it did before the trial court in its motion opposing the protective order -- that it was intrinsically a legal error to treat *de bene esse* depositions as subject to the discovery deadline. We cannot agree.

In allowing or disallowing a deposition to be taken for use at trial, it is appropriate that the district court consider all the circumstances, including fairness to the adverse party and the amount of time remaining before the date set for trial. The district court can set a definite time limit for the taking of the very deposition it is permitting to be taken. And the district court can make that time limit the same as the time limit for discovery depositions. Nothing about this approach to

the setting of time limits is inherently unlawful.[8]  The only question is whether the specific time limits that are selected are themselves an abuse of discretion.

Given the circumstances in this case, we are unconvinced that the district court's discretion has been abused.  At least when, as here, the district court -- more than three months before the discovery deadline finally expired -- has warned that all depositions will be subject to the same timing restrictions and when the district court has also determined that the party seeking to take a deposition for use at trial has unduly delayed in undertaking to obtain it, we cannot consider the grant of the protective order or the exclusion of the deposition at trial to have been an abuse of discretion.[9]

---

[8]The district court's identical treatment (for timing purposes) of discovery and *de bene esse* depositions is consistent with the language of the Federal Rules of Civil Procedure, which draw no distinction between the two.  The federal rules simply limit the instances in which a deposition can be used at trial.  See Fed. R. Civ. P. 32.  Depositions are generally devices for discovery.  But in the right circumstances, all or almost all depositions potentially could be used at trial.  For a court to treat discovery deadlines as applying to all depositions is not an uncommon or inherently unreasonable kind of shorthand to say "be done with deposition taking by 'X' date."  So, parties who delay in taking a needed deposition and who assume that a district court will draw (when the Rules do not and if the pretrial order does not) a distinction, for pretrial scheduling purposes, between different kinds of depositions assume a risk: they cannot count on the trial court's allowing a deposition to be taken closer to the trial date.

[9]By the way, nothing in the district court record establishes that a deposition in South Africa would be impossible to arrange in fewer than "X" (that is, some certain number of) days.  As it happened, from the time the letter was issued until the deposition was taken in South Africa was a little over five months.  If Chrysler had moved for the letters even a couple of months earlier, good reason exists to believe that the deposition could have been easily taken before 25 April, the ultimate deadline.

9

- Evidence of the Altered Bills of Lading

Chrysler also challenges the district court's granting of the defendants' motion *in limine* to exclude some evidence of CEC's transactions with a company known as First Imperial. The evidence sought to be excluded was CEC's alteration of some bills of lading to conceal the fact that CEC had sold vehicles in territories in which it was forbidden -- by its contract with Chrysler -- from doing so. In challenging the district court's grant of the motion *in limine,* Chrysler stresses that evidence also existed that some funds involved in the First Imperial transactions were diverted to pay Chemaly's personal debts.

As always, the pertinent standard of review is important. A ruling admitting or excluding evidence is only reviewed for abuse of discretion. See Ad-Vantage Tel., 37 F.3d at 1463. "[T]he abuse of discretion standard of review recognizes that for the matter in question there is a range of choice for the district court and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make." McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001); see also United States v. Cunningham, 194 F.3d 1186, 1195 (11th Cir. 1999) ("[O]ur job as an appellate court is to determine whether the district court abused its discretion, not

whether we would have admitted or excluded evidence ourselves."); In re Rasbury, 24 F.3d 159, 168 (11th Cir. 1994) (upholding district court ruling under abuse of discretion standard, although also noting that "we would have affirmed the district court had it reached a different result, and if we were reviewing this matter *de novo*, we may well have decided it differently"). The district court's ruling on the admissibility of this evidence was within its discretion.

Chrysler argues that the evidence of the altered bills of lading is relevant to the question of whether CEC was organized for the purposes of working a fraud upon creditors, one of the elements of piercing the corporate veil under Florida law. See Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1120 (Fla. 1984). The crux of Chrysler's veil piercing claim is that Del Marmol and Chemaly funneled corporate money out of CEC and into their personal accounts and to pay off their personal debts. As a result of this diversion, CEC was unable to satisfy its debts to Chrysler.

Chrysler's challenge to the district court's ruling on Defendants' motion to exclude evidence fails to appreciate that the district court allowed Chrysler to put on evidence that the First Imperial transactions were used to divert funds out of CEC. The district court's ruling was a narrow one. The ruling only excluded

11

evidence that bills of lading had been altered to conceal that sales had been made outside of CEC's rightful territory.[10]

The district court first concluded that the evidence was not relevant. Chrysler argues that the fraudulent alteration of the bills of lading shows a pattern on the part of defendants to engage in fraudulent conduct. Even if we suppose that one kind of fraud may have logical relevance to other kinds, the rules of evidence exclude some "relevant" evidence. See generally Fed. R. Evid. 402. For example, Federal Rule of Evidence 404(b) states that evidence of one wrong act by a person is not admissible to show he acted in conformity with it on another occasion. Evidence of the other wrong may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Fed.R.Evid. 404(b). But as the district court saw it, nothing connected the alteration of the bills of lading to the main point of this case: CEC's inability to pay its debts on account of defendants channeling money out of CEC for the Defendants' personal use. The fraud involved in altering the bills of lading deals with the source of funds coming into CEC and is significantly different from the fraud underlying the suit: the

---

[10]In granting the motion *in limine*, the district court stated that "I am going to grant the motion . . ., which does not mean that you are precluded from other evidence about diverting funds and things like that." It further instructed Chrysler that "[i]f [defendants] completely ignored the corporate form and just treated this as their personal funds, if you have evidence to that effect, you can show that." Chrysler was simply instructed to "[h]ide the other fraud; that is, that they were misrepresenting to Chrysler just exactly what they were doing with the jeeps . . .."

fraud involved in diverting funds out of CEC and, thus, causing CEC to become insolvent and, therefore, allowing CEC and defendants to evade liability to Chrysler.

Moreover, even if the evidence about the bills of lading was admissible otherwise, the district court concluded that the relevance of the alterations of bills of lading would be substantially outweighed by the unfair prejudicial effect of the evidence under Federal Rule of Evidence 403. The district court noted that Chrysler had "a lot of evidence" (other than the bill-of-lading evidence) to support its case.

In striking the balance between the costs and benefits of the bill-of-lading evidence, other judges might have come down the other way. But the district court was within its discretion to conclude that evidence of the fraudulent alteration of the bills of lading posed too great a danger of improperly swaying the jury on the veil-piercing claim, which centered around the fraudulent diversion of funds out of CEC.


• Laches

13

Chrysler also challenges the district court's jury instructions on the affirmative defense of laches and the district court's denial of Chrysler's motion for a directed verdict on that question. We, however, need not address the ultimate merits of this claim. The jury's special verdict form indicates that they based their decision on Chrysler's failure to establish that del Marmol and Chemaly dominated and controlled CEC to such an extent that the company was merely their alter ego.[11] For the jury to reach the question of whether Chrysler's claim was barred by the doctrine of laches was, therefore, unnecessary; and no reversible error can be based on the district court's handling of the issue.

The judgment of the district court is hereby affirmed.

AFFIRMED.

---

[11]This element is also an element of a cause of action to pierce the corporate veil under Florida law. See Sykes, 450 So.2d at 1120.