[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 04-11404

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-03058-CV-S-NE

GREGORY L. GAMBLE,

Plaintiff-Appellant,

versus

ARAMARK UNIFORM SERVICES,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

(May 19, 2005)

Before EDMONDSON, Chief Judge, TJOFLAT and KRAVITCH, Circuit Judges.

PER CURIAM:

Greg Gamble appeals the district court's grant of summary judgment in favor of Aramark Uniform Services on his claims of discriminatory failure to promote, discriminatory demotion and discriminatory discharge. We affirm on all claims. On the failure to promote claim, Gamble has failed to demonstrate that Aramark's articulated rationale for the employment decision is pretextual. And Gamble has failed to establish a prima facie case for discriminatory demotion and discharge.

## FACTS

Greg Gamble, an African American male, served as a soil counter in the Production Department of Aramark Uniform Services, a garment rental company.

Aramark's Service Department employs route service representatives ("RSRs") to serve as the primary customer contact on assigned routes: delivering garments, collecting payments, selling new business, and renewing service agreements. Route Service Support ("RSSs") serve as relief drivers; they are not assigned to a specific route. Aramark requires, at minimum, that RSRs and RSSs have a high school diploma and a clean driving record.

In 1998, Aramark promoted Gamble to Wholesale Route Helper ("WRH"), a position created to assist the Route 25 RSR with manual labor because of the route's large industrial clients. Gamble was the only WRH that Aramark's Decatur Market Center ever employed. Because two trucks were available for Route 25, on some days he and the RSR served in a joint capacity and divided the route's business. On other days, Gamble and the RSR used one truck; and he served as a helper. The RSR however was always ultimately responsible for the route and the paperwork.

Between 1998 (the time that Gamble was promoted to the WHR position) and January 2001, two Route 25 RSRs left the position. Gamble contends that he applied for the vacancies. Aramark hired a white male to fill each vacancy. Both successful applicants had either filled in for the Route 25 RSR position or had served in a similar capacity for a competitor. Scott Black, the Decatur Market Center's General Manager, expressed concerns that Gamble lacked skills required for the RSS or RSR positions, observing that paperwork was not properly completed when Gamble ran the route. During a conversation with Gamble, Black commented that "certain people are made to do certain jobs." In his deposition, Black explained that he believed Gamble's interpersonal and communications skills were lacking.

In January 2001, as a result of a customer complaint, Emilie Williams, the Route 25 District Manager, provided Gamble with a performance review. Williams noted several problem issues relating to Gamble's service.[1] The following month, Gamble was written up for his failure to improve these issues. Gamble was placed on a Performance Improvement Plan ("PIP").[2]

Around 12 January 2001, Gamble bid on an RSS position. Jeff Luter, a white male, was hired. Luter had served as a service department supervisor for an Aramark competitor. Lance Townley, the Decatur Market Center's Assistant General Manager, stated that he believed that Luter was the more qualified candidate. In addition, Townley stated the employment decision was motivated in part by his concerns about Gamble's "failure to effectively communicate with and manage customers, failure to handle customer complaints in a satisfactory manner, and . . . general lack of interpersonal and sales skills."

In the spring of 2001, Route 25's largest customer ceased operations, causing Aramark to lose a large part of its Route 25 business. So, Aramark decided to eliminate the WRH position and offer Gamble a position back in the

---

[1] Williams specifically cited Gamble's (1) failure to exchange a certain number of garments; (2) failure to clean the lockers; and (3) time management problems.

[2] The PIP was lifted on 16 March 2001.

Production Department. Aramark told Gamble the move would be temporary if Route 25 regained its former level of business.

Gamble refused to sign the transfer paperwork associated with the Production Department Position. Aramark contends that upon this refusal, Gamble effectively quit. Gamble states that he never said that he quit but was told that, if he did not sign the paperwork, he would be terminated.

In December 2001, Gamble filed a complaint in the Northern District of Alabama, claiming that Aramark failed to promote him, demoted him and terminated him because of his race in violation of Title VII. The district court granted Aramark's motion for summary judgment. Gamble now appeals.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 826 (11th Cir. 2000). And we construe the "evidence and all factual inferences reasonably drawn from the

evidence in the light most favorable to the nonmoving party." Stewart v. Happy

Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997).[3]


## DISCUSSION


A.    Promotion Claim[4]

A plaintiff may establish a prima facie case of discriminatory failure to

promote by showing that (1) he is a member of the protected class; (2) he was

---

[3]Gamble contends that the district court improperly construed the evidence in favor of Aramark (the moving party) by adopting Aramark's Brief in Support of its Motion for Summary Judgment in its order ("For all the reasons stated in defendant's brief . . . which is adopted as the opinion of this court, defendant's motion is granted."). We reject this contention. We note that Gamble submits no evidence that the district court actually failed to review the evidence in accordance with the Rule 56 standards for summary judgment, but merely points to the adoption as per se impermissible.

Nothing prohibits a district court's adoption of a party's *arguments* on a summary judgment motion. A court is not required to include factual findings or legal conclusions in a decision on summary judgment at all. Fed. R. Civ. P. 52(a) (stating that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56"). In other contexts, we have permitted the adoption of a party's *factual findings*. See, e.g., Hamm v. Member of the Bd. of Regents of State of Fl., 708 F.2d 647, 650 (11th Cir. 1983) (permitting adoption of party's findings of fact in court's Fed.R.Civ.P. 41(b) dismissal of claim). In addition, we have recognized that district courts should be afforded discretion in the management of their cases. See Chrysler Intern. Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002). Therefore, we conclude that the district court did not err in adopting the arguments set forth in Aramark's brief in support of summary judgment.

[4]In his complaint, Gamble asserted claims based on several incidents in which Aramark allegedly failed to promote him based on his race. Gamble filed his charge on 30 April 2001. Therefore, only his claim regarding the decision to hire Jeff Luter for a RSS position in January 2001 is timely under Title VII. See 42 U.S.C. § 2000e-5(a).

qualified and applied for the promotion; (3) he was rejected; (4) after the rejection, the employer promoted a person outside of the protected class. <u>Walker v. Mortham</u>, 158 F.3d 1177, 1187 (11th Cir. 1998). The defendant may rebut this prima facie case by articulating a legitimate, non-discriminatory reason for the decision. <u>Id</u>. at 1184.

The plaintiff must then come forward with evidence that the employer's rationale is pretextual. <u>Id</u>. At that point, a plaintiff can withstand summary judgment if he has "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotations and citation omitted). But, "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer." <u>Id.</u> at 1543.

Here, we will assume that Gamble presented a prima facie case of discriminatory failure to promote him to the RSS position in January 2001.[5] Even

---

[5]We note that whether Gamble was "qualified" is a close issue: he maintained the minimum qualifications (a high school diploma and a driver's license) and had work experience assisting the RSRs and RSSs. Despite acknowledging these minimum qualifications, an Aramark assistant

with such an assumption, Aramark has proffered evidence in support of its legitimate non-discriminatory reasons for the decision: Gamble's lack of interpersonal skills and the poor evaluation of his work performance rendered him the less suitable candidate.

Gamble cannot demonstrate that these reasons were pretextual. In an attempt to do so, Gamble argues that (1) Luter was not more qualified; (2) Gamble had been passed over for other positions in the past for candidates who were less qualified; (3) at least one RSM with whom he worked commented positively on his performance;[6] (4) his 16 March 2001 coaching log stated that his performance improved;[7] and (5) Black's comment that "certain people are made to do certain jobs" suggests that the decision was racially motivated. But this evidence is insufficient to permit a reasonable fact finder to disbelieve Aramark's proffered nondiscriminatory rationale.

---

general manager stated that he thought Gamble would be unable to handle tough issues with customers, a skill required for the RSS and RSR positions. For purposes of this opinion we will assume, without concluding, that Gamble's minimal qualifications were sufficient to establish a prima facie case.

[6]Gamble submitted a deposition in which an Aramark manager acknowledged that a Route 25 RSR who worked with Gamble complimented his performance.

[7]The 16 March 2001 coaching log cannot serve as evidence of pretext because this lifting of the PIP did not occur until after the contested January 2001 promotion.

Gamble's assertions about the successful candidates' alleged inferior qualifications are insufficient to demonstrate pretext: Gamble may not substitute his opinion -- that job experience within the company renders an applicant the most qualified -- for that of Aramark. A reasonable employer could prefer a person, like Luter, who had served in a supervisory position with a competitor, rather than an individual within the company with some experience serving in the available position. See Chapman v. AI Transport, 229 F.3d 1012, 1030-31 (11th Cir. 2000) (rejecting plaintiff's claims that because he had certain qualifications that successful candidate lacked, employer's rationale -- based on other criteria -- was pretextual); Combs, 106 F.3d at 1543.

About the RSR's positive impression of Gamble's performance, at least one other circuit has noted that co-worker opinions are "close to irrelevant" in Title VII claims. See Hawkins v. Pepsico, Inc., 203 F.3d 274, 280 (4th Cir. 2000) ("[I]t is the perception of the decision maker which is relevant . . . . The alleged opinions of . . . co-workers as to the quality of [plaintiff's] work are . . . 'close to irrelevant.'") (internal quotations and citations omitted). Finally, taken in context, Black's comment does not suggest a racial animus, but rather supports Aramark's rationale: that Gamble was not right for the position because of his interpersonal skills. Because Gamble failed to set forth specific facts demonstrating that

9

Aramark's rationale was pretextual, the district court properly granted summary judgment to Aramark.

B.    Demotion/Termination

A plaintiff may establish a prima facie case of discriminatory demotion or termination by showing that (1) he is a member of a protected group; (2) he was qualified for the position he occupied; (3) he was demoted or terminated; and (4) he was replaced by an individual outside of his protected class. Sturniolo v. Sheaffer, Eaton, Inc., 15 F.3d 1023, 1025 (11th Cir. 1994); Jones v. Lumberjack Meats, Inc., 680 F.2d 98, 102 (11th Cir. 1982).

Here, Gamble failed to establish his prima facie case: he was not replaced by anyone, let alone a person from outside of his protected class. The WRH position was eliminated. Therefore, summary judgment was appropriate.

**AFFIRMED.**