[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11410
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-21915-DPG


MICHAEL MENNELLA,
an individual,

Plaintiff-Appellant,

versus

AMERICAN AIRLINES, INC.,
a foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 11, 2020)

Before JORDAN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Michael Mennella ("Mennella") appeals the grant of summary judgment in favor of American Airlines, Inc. ("American") on his claims for negligence and defamation. Mennella raises three issues on appeal. Mennella first argues that the district court should not have dismissed his defamation claim because it was defamation per se under Florida law and there was enough evidence in the record to show that the statement had been published to a third party. Mennella next argues that his negligence claim should not have been dismissed because the governing clause of the Airline Deregulation Act, 49 U.S.C. § 41713(b)(4)(A), did not preempt it.[1] Finally, Mennella argues that the district court's order refusing to allow out-of-time discovery was an abuse of discretion. After a review of the record and the applicable law, we affirm.

## I. Background

---

[1] 49 U.S.C. § 41713(b)(4)(A) provides:

Except as provided in subparagraph (B), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).

In August of 2016, Mennella arrived at the Miami International Airport where he planned to board American Flight 2059, a nonstop service to Las Vegas, Nevada, for a work conference. Mennella, a double amputee who relies on prosthetics to walk, usually travels with wheelchair assistance, meaning that an airline employee pushes his wheelchair to the gate. When Mennella arrived at the airport, he waited curbside for fifteen or twenty minutes before an attendant arrived with a wheelchair. The attendant, according to Mennella, spoke only Spanish and was so poor at communicating that Mennella was unable to utilize her service. Frustrated, Mennella went to the ticket counter to ask for another wheelchair. By his own estimate, he waited for nearly an hour before deciding that he was getting too close to missing his flight. Mennella then walked almost all the way to his gate on his prosthetic legs, though he was able to get a ride on a golf cart for the last portion of his walk.

When Mennella arrived at his gate, an American gate attendant announced that they were preboarding. Mennella was the first civilian passenger on the plane.[2] Mennella claimed that the American flight attendants would not help him put his prosthetics in the overhead compartment and that another passenger had to help him instead. Immediately after boarding, Mennella demanded a drink.

---

[2] Kate Seefeldt, one of the American flight attendants on board the flight, testified in her deposition that they seated two undercover law enforcement agents before the other passengers were allowed to board.

3

Mennella testified that he also asked for a glass of ice.  The accounts of what happened next vary: Mary Armstrong, the lead flight attendant servicing the first-class passengers, testified that she could not serve Mr. Mennella alcohol because the plane had not been catered yet, but that she did give him some water.[3] Mennella stated that everyone else around him was served a drink but not him. The record is undisputed that, every five or ten minutes, Mennella continued to ask for a drink.[4]

The flight became turbulent shortly after departure, and the captain instructed everyone to remain seated.  During this time, while the seatbelt sign was still illuminated, Mennella got up from his seat and again demanded alcohol from Armstrong.  According to Armstrong and the other flight attendants, Mennella made this demand while standing over Armstrong, who was strapped into her jump seat pursuant to the captain's order.  Mennella then made his way to the back of the airplane.  Armstrong called ahead to warn the other flight attendants of Mennella's approach, though they were already aware he was coming because they had seen him standing over Armstrong and then walking towards the back.  Once in the back, Mennella demanded alcohol several times from the flight attendant seated

---

[3] Another flight attendant testified that she picked up an empty cup from Mennella's seat after the safety demonstration.

[4] Mennella testified that he also asked for ice and aspirin.

4

nearest the aisle.  These demands were made in a loud voice and were, according to the American flight crew, accompanied by spitting.  Upon hearing of Mennella's behavior, the captain told the flight attendants to "under no circumstances" serve Mennella alcohol.  The captain later testified that in issuing this mandate, he was motivated by a concern about giving an already agitated person alcohol.

Mennella eventually retook his seat but continued to demand a drink.  Concerned about having to relay the captain's order about not serving him alcohol, the flight attendants enlisted the help of an undercover law enforcement officer ("LEO") who happened to be traveling on the flight to communicate with Mennella.  The LEO came and sat at the front of the plane with Armstrong, though this did not deter Mennella's requests.  Mennella even repeatedly asked to speak to the captain.  At some point amid these confrontations, Mennella said that if he did not have alcohol, it would create a medical emergency.[5]  The American flight crew paged the passengers to see if anyone with medical experience was on board, and a nurse responded to the call.  Here, too, the testimony varies.  The American flight attendants claim Mennella refused help from the nurse, while Mennella claims the nurse was unable to help him because the American staff would not provide her with the medical kit on board.  Meanwhile, the captain called to a doctor on the

---

[5] Specifically, Mennella said that if he did not get a drink, he would develop a blood clot and die.

ground, who suggested injecting Mennella with Benadryl.  The captain did not think this was a wise course of action and decided to land the plane.  Mennella claims that, during this time, an American flight attendant told the captain via a phone in first class that Mennella was "drunk," and immediately after that, the plane made an unscheduled landing.

The pilot landed the plane in Dallas, Texas.  Officers dispatched by the Dallas airport were waiting to board the plane as soon as it arrived.  These officers had been informed by dispatch that there was an "extremely intoxicated passenger" who needed "medical attention."  Mennella willingly accompanied the officers, who quickly determined that Mennella was not, in fact, intoxicated.  At that point, one of the officers spoke to the passengers and flight attendants, while the other spoke to the pilot.  The pilot told the police officer that the diversion was for medical reasons, not intoxication.  The passengers reported mixed impressions about the incident—some said that Mennella was "loud and obnoxious," while others thought he was just in pain.  According to one of the officers, Officer Callahan, a flight attendant told him that she did not serve Mennella any alcohol because she thought "he had had enough to drink."  Eventually, Flight 2059 continued on its way to Vegas, and Mennella boarded a different flight.

Mennella brought suit against American in February of 2017 in a Florida state court alleging defamation per se, negligence, intentional infliction of

6

emotional distress, and negligent infliction of emotional distress.  American removed the suit to federal court a few months later.  After removal, Mennella filed an amended complaint that alleged American defamed Mennella by calling him a "drunk," violated Title III of the Americans with Disabilities Act, and was negligent in failing to train its employees to care appropriately for a handicapped passenger.[6]

During this process, the district court issued a scheduling order on July 20, 2017.  According to this order, "[f]act discovery" was to be completed by May 4, 2018.  On March 20, 2018, less than two months before the discovery deadline, counsel for Mennella submitted a "Second Request for Production" to American that included a request for Flight 2059's passenger manifest.  American objected to this request on April 19, 2018 as overly broad and because responses might result in possible violations of federal regulations governing the confidential information of passengers.  Counsel for Mennella repeated his request for production of the passenger names a few times after this objection via email before the discovery deadline passed.  After the deadline passed, counsel for American responded that he would produce the names of the passengers on the condition that the parties sign a confidentiality agreement.  This agreement was signed on June 25, 2018.  The

---

[6] American moved to dismiss the Americans with Disabilities Act count, arguing that the title did not apply to airlines.  This motion was granted.  Mennella did not appeal this decision.

7

following day, American provided the names of 16 passengers, albeit without contact information for any of them.  On July 16, 2018, the addresses for some of the passengers were provided, and almost two weeks later, counsel for Mennella indicated he wanted to depose those passengers.  American objected, as the discovery deadline had passed, and the district court denied Mennella's motion to take the depositions outside of the set discovery period, finding Mennella's delay in requesting depositions was not due to excusable neglect.

Before the district court resolved the discovery issue, American moved for summary judgment.  American argued that, as a matter of law, the district court must dismiss the defamation count because being called "drunk" was not actionable per se.  American also argued there was insufficient evidence that anyone other than American employees heard the alleged statement.  The district court granted summary judgment on the defamation claim on both grounds.  The district court also dismissed the negligence claim as preempted by the Airline Deregulation Act.  This appeal followed.

## II. Standard of Review

"We review a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court."  *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233–34 (11th Cir. 2001).  We view the evidence and all factual inferences from that evidence in the light most favorable to

the non-movant. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). Summary judgment is appropriate where there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

For purely legal issues, such as statutory interpretation, we apply a *de novo* standard of review. *Estate of Shelfer v. Comm'r*, 86 F.3d 1045, 1046 (11th Cir. 1996).

We review the district court's ruling on excusable neglect for abuse of discretion. *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 997 (11th Cir. 1997).

## III. Discussion

We address Mennella's arguments on appeal in the order they appear in the briefs.

### A. Mennella's Defamation Claim Fails

Mennella identifies four "statements" which he alleges were "published" to an outside third party: (a) the phone call between the airline stewardess and the captain of the airplane where she allegedly told the captain Mennella was drunk; (b) the police officers waiting for Mennella at the Dallas airport were indisputably dispatched in response to an "extremely intoxicated" passenger, which Mennella asserts means a defamatory statement was spoken by American Airlines at some

9

point; (c) the passengers hearing the statements the airline stewardess told the captain when she called him through the internal phone system on the airplane; (d) Officer Callahan's deposition testimony that he remembered a flight attendant saying she "wasn't going to provide" Mennella with any alcohol because she "felt like he had already had enough to drink."  We deal with each one in turn.

### 1. Mennella Did Not Produce Evidence Sufficient to Survive Summary Judgment on the Issue of Publication for Three of the Statements

Under Florida law, the tort of defamation has five elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement must be defamatory."  *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  "[A] defamatory statement is one that tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation."  *Id*. at 1108–09.  Publication is an "essential element" of slander.  *Advantage Pers. Agency, Inc. v. Hicks & Grayson, Inc.*, 447 So. 2d 330, 331 (Fla. 3d. DCA 1984).

To determine if a statement was "published" in the context of slander, Florida courts look to see if it was "communicated to a third person."  *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d. DCA 2007).  Thus, one

10

statement of which Mennella complains, the flight attendant's call to the captain via the internal airplane system wherein she allegedly described Mennella as "drunk," cannot be defamatory as it was not addressed to a third party. *See Advantage*, 447 So. 2d at 331.

As to the instructions received by the officers from dispatch, there is no direct link between any allegedly defamatory statement made by an American Airlines employee and a third party. True, the officers heard that Mennella was intoxicated from dispatch, but there is no evidence anyone from American made such a statement. The captain testified under oath that he did not communicate that Mennella was intoxicated to anyone, and in the absence of any evidence to the contrary, we cannot assume that he actually did communicate such to dispatch. *See Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 560 (11th Cir. 2013) (affirming summary judgment where plaintiff's theory was based on assumptions); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1301 n.46 (11th Cir. 2012) (holding that a plaintiff's "assumptions" regarding the timing of events were "not admissible and may not be considered on summary judgment").

Similarly, we find Mennella's argument that passengers in the first-class cabin must have heard Armstrong telling the pilot that Mennella was intoxicated to be entirely speculative. *See Hammett v. Paulding Cty.*, 875 F.3d 1036, 1049 (11th Cir. 2017) ("Although all reasonable inferences are to be drawn in favor of the

nonmoving party, an inference based on speculation and conjecture is not reasonable.") (quotation marks omitted).  There was not sufficient evidence presented that this statement, even if it occurred, was published to any third party.

### 2. The Fourth Allegedly Defamatory Statement Did Not Rise to Defamation *Per Se*

Finally, Mennella points to Officer Callahan's assertion that one flight attendant told Officer Callahan that she did not serve Mennella alcohol because she "felt like he had already had enough to drink" as a defamatory statement. However, this statement was not defamation *per se*.

Because Mennella alleged defamation *per se*, he had to prove American uttered a "statement[] so obviously defamatory, that is damaging to reputation, that the mere publication of them gives rise to an absolute presumption both of malice and damage." *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. Dist. Ct. App. 1973); *see also Johnson v. Fin. Acceptance Co. of Georgia*, 118 Fla. 397, 401, 159 So. 364, 365 (1935) ("In the case of words actionable per se their injurious character is a fact of common notoriety, established by the general consent of men, and the court consequently takes judicial notice of it.  They necessarily import damage and, therefore, in such cases general damages need not be pleaded or proved but are conclusively presumed to result, and special damages need not be shown to sustain the action.").

12

The individual statement Officer Callahan reported was not "damaging to [Mennella's] reputation" or "obviously defamatory" as to constitute defamation *per se*. *Wolfson*, 273 So. 2d at 776. The statement did not even accuse Mennella of being a "drunk," as Mennella alleged. Rather, the stewardess was explaining the basis of her own actions to an officer of the law in an ongoing investigation. We find that such an explanation is not defamatory, much less defamation *per se*. Other than a prohibition-era Florida Supreme Court case which held that "to falsely and maliciously charge one with being repeatedly, or continuously or often-times drunk, or with being an habitual drunkard, is actionable per se in this jurisdiction," *Le Moine v. Spice*r, 1 So. 2d 730, 733 (1941), Mennella has offered no case law that would suggest the stewardess's statement was defamatory, let alone defamation *per se*. To say that someone is "repeatedly . . . drunk" or a "habitual drunkard" is much more insulting than to explain that one did not serve a customer alcohol because one assessed that the customer had already "had enough" to drink. Thus, there is no basis to conclude the stewardess's lone statement was defamation *per se*.

B. The Airline Deregulation Act Preempts the Negligence Claim

Four categories of alleged acts give rise to Mennella's negligence claim: (1) failure to recognize and assist Mennella with his disability, (2) failure to provide Mennella with the appropriate food and beverages on the aircraft, (3)

13

falsely accusing Mennella of being drunk to outside parties,[7] and (4) diverting the plane under false pretenses.  Mennella's negligence claim is preempted in its entirety by the Airline Deregulation Act.

The Airline Deregulation Act includes an express preemption section.  In relevant part, that section provides:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C.A. § 41713(b)(1).  In interpreting a prior (but indistinguishable for our purposes) version of this provision, the Supreme Court compared this preemption clause to the preemption clause found in the Employee Retirement Income Security Act.[8]  S*ee Morales v. Trans World Airlines*, Inc., 504 U.S. 374, 384 (1992).  Because the "relevant language" in both statutes was identical, the Court decided a similar standard was appropriate: "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted

---

[7]  While this portion of the negligence argument encompasses the same factual situation as the defamation claim, it is also separately incorporated into the negligence claim.

[8] 29 U.S.C.A. § 1144 reads:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

14

under [49 U.S.C. § 41713(b)(1)]." *Id*. We have held that this standard is quite broad:

> In short, the phrase "related to the . . . services of an air carrier" means having a connection with or reference to the elements of air travel that are bargained for by passengers with air carriers. This includes not only the physical transportation of passengers, but also the incidents of that transportation over which air carriers compete.

*Branche v. Airtran Airways, Inc*., 342 F.3d 1248, 1258–59 (11th Cir. 2003). In *Branche*, we listed examples of what we meant by "incidents of transportation," including "on-board food and beverage services, ticketing and the like." *Id*. at 1258. Then, in *Koutsouradis v. Delta Air Lines,* Inc., we found that a state law breach of contract claim was preempted because it dealt with services that the airline provided as defined in *Branche*. *See* 427 F.3d 1339, 1343–44 (11th Cir. 2005). These cases relied not on the type of state law claim, but on what the state law claim targeted, to determine preemption. Thus, we are bound by precedent that state law claims, such as breach of contract or negligence, that affect an airline's "services" are preempted by the Airline Deregulation Act. Mennella's claim that the airline provided untimely wheelchair assistance and that the airline flight attendants did not properly accommodate his disability are "incidents of . . . transportation," or aspects that "relate[] to the . . . services of an air carrier." *See Branche*, 342 F.3d at 1258. So too are the flight attendants' decision to refuse service for "on-board food and beverage." *Id*. We likewise find Mennella's claims

15

regarding how the flight attendants and pilots responded to an emergency situation while in the air to be preempted. An airline's handling of crises during travel is "related to" the "services of the air carrier" as contemplated by the statute. Further, we note that the complaint alleges that this claim of negligence is based upon the airline's failure "to supervise and to train" its employees to respond to the needs of a handicapped passenger. A failure to train employees in how to accommodate a passenger is clearly connected to a service the airline provides. The district court was correct to dismiss the suit on this ground.

### C. The District Court Did Not Abuse Its Discretion in Denying the Motion for Out-of-Time Depositions

Mennella argues that the district court abused its discretion by denying Mennella's motion for untimely discovery because counsel for American caused the delay, not Mennella, and the discovery was essential to the question of publication. We disagree. A trial judge has "broad discretion" in controlling the discovery process. *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (citation omitted). "When an act may or must be done within a specified time, the court *may*, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6. (emphasis added). Here, the district court did not abuse its discretion in determining there was no "excusable neglect." In *Chrysler International Corp. v. Chemaly*, we affirmed a district court's refusal to permit an out of time deposition.

16

*See* 280 F.3d 1358, 1360–61 (11th Cir. 2002).  We held that it was not an abuse of discretion to refuse a party the ability to take a deposition for trial after the discovery deadline had passed because the delay was caused, in part, by the party seeking the deposition.  *See id.*  Here, Mennella waited over a year from filing his lawsuit and eight months from the court's setting of the discovery schedule to seek the first-class passenger information from American. The potential importance of these depositions to the summary judgment motion does not necessarily make the district court's decision an abuse of discretion.  Therefore, the district court was within its discretion to find that Mennella did not diligently pursue the evidence as required for relief.

## IV. Conclusion

Because Mennella has not produced any evidence that non-privileged statements were published to third parties to support his defamation claims, and because the Airline Deregulation Act preempts negligence claims tied to airline services, we affirm the dismissal of Mennella's claims against American.  Finally, because Mennella did not diligently pursue information relating to the first-class passengers for several months, we affirm the district court's denial of his motion to take untimely depositions.

**AFFIRMED.**

17