**NATIONAL COLLEGIATE RECRE-ATION SERVICES d/b/a American Hospitality Academy, Plaintiff,**

v.

**Michael CHERTOFF, Secretary, U.S. Department of Homeland Security, Eduardo Aguirre, Jr., Director, U.S. Citizenship and Immigration Services, Evelyn M. Upchurch, Director, Texas Center, Administrative Appeals Office, Defendants.**

**C.A. No.: 9:05–3011–PMD.**

United States District Court,
D. South Carolina,
Beaufort Division.

April 28, 2006.

Gregg Meyers, Gregg Meyers Law Firm, Charleston, SC, Robert Kendall, Jr., Robert Kendall Jr., Law Office, Washington, DC, for Plaintiff.

Lee Ellis Berlinsky, U.S. Attorneys Office, Charleston, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court on Defendant United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## BACKGROUND

On October 6, 2004, Plaintiff American Hospitality Academy ("AHA") filed Form I–129, Petition for a Nonimmigrant Worker, with the USCIS Texas Service Center. Through this Petition, AHA sought to be approved as an international cultural exchange program and to obtain Q–1 visas for five named beneficiaries pursuant to section 101(a)(15)(Q)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1101(a)(15)(Q)(i). A Q-status nonimmigrant alien is defined as "an alien having a residence in a foreign country which he has no intention of abandoning who is coming temporarily (for a period not to exceed 15 months) to the United States as a participant in an international cultural exchange program approved by the Secretary of Homeland Security for the purpose of providing practical training, employment, and the sharing of the history, culture, and traditions of the country of the alien's nationality and who will be employed under the same wages and working conditions as domestic workers." 8 U.S.C.A. § 1101(a)(15)(Q)(I).

By letter dated October 18, 2004, the Director of USCIS Texas Service requested additional information from AHA regarding the Form I–129. AHA responded to the Director's request for additional information. By decision dated October 26, 2005, the Director of USCIS Texas Service Center denied AHA's petitions for Q-status for nonimmigrant workers, stating that the petition contained insufficient evidence of the requisite factors necessary for approval of the program as an international cultural exchange program. On November 22, 2004, AHA perfected a timely appeal of the Director's denial of its petition and submitted a brief in support of its appeal to DHS's Administrative Appeal Office ("AAO"). By decision dated July 13, 2005, the AAO dismissed AHA's appeal

and affirmed the Director's decision dated October 26, 2004.

On October 21, 2005, Plaintiff brought this suit against the named defendants (hereinafter known as "the Government") pursuant to the Administrative Procedure Act ("APA"), asking this court to declare that the Government's decisions dated October 26, 2004 and July 13, 2004 were in violation of the INA and APA. Plaintiff asks the court to reverse or remand this matter to the agency for a decision consistent with the evidence, to award Plaintiff reasonable attorneys' fees and costs, and to grant such other relief as may be just and proper. The Government asserts that this court has no jurisdiction to review the discretionary decisions of the named defendants, and that the case should therefore be dismissed.

## ANALYSIS

### Standard of Review

■ When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995); *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir.1991).

## Subject Matter Jurisdiction

Plaintiff asserts that the court's jurisdiction to review visa petition denials is under the Administrative Procedure Act, 5 U.S.C. §§ 551, et seq.,[1] and 28 U.S.C. § 1331.[2] The primary issue here is whether the Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 ("IIRIRA") (1996), divests this court of jurisdiction to review the instant controversy. The IIRIRA, which amended the Immigration and Nationality Act, contains a number of provisions limiting judicial review of INS decisions. The new scheme is set forth at 8 U.S.C. § 1252.

### 8 U.S.C. § 1252(a)(2)(B)(ii)

The Government argues that § 306 of the IIRIRA, which amends 8 U.S.C. § 1252(a)(2)(B)(ii), bars this court from reviewing the INS's refusal to approve AHA as an international cultural exchange program and the subsequent denial of AHA's petition for five nonimmigrant Q–1 visas. Title 8 U.S.C. § 1252(a)(2)(B)(ii), provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review iii (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority *for which is specified under this sub-*

---

1. Specifically, the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

2. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331.

*chapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.*

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). The subchapter referred to is Subchapter II of Chapter 12 of Title 8, which covers § 1151 through § 1378. Section 1184, which falls squarely within this Subchapter, governs the admission of nonimmigrants, including Q–1 nonimmigrants. Specifically, § 1184 provides: "The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe." 8 U.S.C. § 1184(a)(1). Title 8 C.F.R. § 214.2(q)(2)(i), a Federal Regulation promulgated pursuant to § 1184, states that,

> A nonimmigrant alien may be authorized to enter the United States as a participant in an international cultural exchange program approved by the Attorney General for the purpose of providing practical training, employment, and the sharing of the history, cultural, and traditions of the country of the alien's nationality. The period of admission is the duration of the approved international cultural exchange program or fifteen (15) months, whichever is shorter. A nonimmigrant alien admitted under this provision is classifiable as an international cultural exchange visitor in Q–1 status.

Title 8 C.F.R. § 214.2(q)(3)(i) states that, in order to be approved as an "international cultural exchange program" and be eligible to obtain Q–1 visas for nonimmigrant aliens, a United States employer:

> shall petition the Attorney General on Form I–129, Petition for a Nonimmigrant Worker, for approval of an international cultural exchange program which is designed to provide an opportunity for the American public to learn about foreign cultures. The United

States employer must simultaneously petition on the same Form I–129 for the authorization for one or more individually identified nonimmigrant aliens to be admitted in Q–1 status. These aliens are to be admitted to engage in employment or training of which the essential element is the sharing with the American public, or a segment of the public sharing a common cultural interest, of the culture of the alien's country of nationality. The international cultural exchange visitor's eligibility for admission will be considered only if the international cultural exchange program is approved.

Title 8 C.F.R. § 214.2(q)(3)(iii) further states that an "international cultural exchange program" must meet all of the following requirements:

> (A) Accessibility to the public. The international cultural exchange program must take place in a school, museum, business or other establishment where the American public, or a segment of the public sharing a common cultural interest, is exposed to aspects of a foreign culture as part of a structured program. Activities that take place in a private home or an isolated business setting to which the American public, or a segment of the public sharing a common cultural interest, does not have direct access do not qualify.

> (B) Cultural component. The international cultural exchange program must have a cultural component which is an essential and integral part of the international cultural exchange visitor's employment or training. The cultural component must be designed, on the whole, to exhibit or explain the attitude, customs, history, heritage, philosophy, or traditions of the international cultural exchange visitor's country of nationality. A cultural component may include struc-

tured instructional activities such as seminars, courses, lecture series, or language camps.

(C) Work component. The international cultural exchange visitor's employment or training in the United States may not be independent of the cultural component of the international cultural exchange program. The work component must serve as the vehicle to achieve the objectives of the cultural component. The sharing of the culture of the international cultural exchange visitor's country of nationality must result from his or her employment or training with the qualified employer in the United States.

Under these Regulations, it is not clear that section 1252(a)(2)(B)(ii) precludes judicial review of the INS's decision to approve or deny a petition for an international cultural exchange program. Neither the INA, nor the Regulations passed pursuant to the INA, specifies that the approval of an international cultural exchange program is within the discretion of the Attorney General or the Secretary of Homeland Security. The Fourth Circuit has not, nor indeed has any Circuit, addressed this issue specifically.

The application of section 1252(a)(2)(B)(ii) to the instant case depends upon whether this section is read broadly or narrowly. Under a narrow interpretation, section 1252(a)(2)(B)(ii) only bars review of those determinations that Subchapter II of the INA specifically identifies as within the discretion of the Attorney General.[3] *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 690 (9th Cir. 2003) (holding that for a statutory provi-

sion to strip this court of jurisdiction under § 1252(a)(2)(B)(ii), the provision must specify that "the right or power to act is entirely within [the Attorney General's] judgment or conscience"); *see Oropeza–Wong v. Gonzales*, 406 F.3d 1135, 1142 (9th Cir.2005) (same). Under this interpretation, those determinations made pursuant to provisions of the INA that do not specify that the determination is "in the discretion" of the Attorney General are not barred from judicial review.[4]

The Government urges the court to read the statute more broadly to apply to all inherently discretionary determinations, not just determinations made pursuant to provisions specified as being within the discretion of the Attorney General. The Government argues that decisions made pursuant to § 214.2(q) fall squarely within the Attorney General's discretion and are therefore insulated from judicial review under a broad reading of 8 U.S.C. § 1252(a)(2)(B)(ii). *See Evangelical Lutheran Church in America v. I.N.S.*, 288 F.Supp.2d 32, 39–40 (D.D.C.2003). Because the Attorney General must exercise his discretion in determining whether an applicant has met the requirements listed in 8 C.F.R. § 214.2(q)(3)(iii), approval or denial under this Regulation is implicitly and inherently discretionary. As such, although neither the Regulations nor the INA specifically states that the Attorney General may, in his discretion, determine whether or not to approve a program as an "international cultural exchange program," the Government asserts that such a deter-

---

**3.** Many provisions of Subchapter II do so state. *E.g.,* 8 U.S.C. 1182(a)(3)(D)(iv) ("The Attorney General may, *in his discretion,* waive the application of clause (i) . . .").

**4.** Further narrowing the interpretation of § 1252(a)(2)(B)(ii), the Ninth Circuit has

found that the provision "applies only to acts over which a statute gives the Attorney General pure discretion unguided by legal standards or statutory guidelines." *Medina–Morales v. Ashcroft,* 371 F.3d 520, 528 (9th Cir. 2004).

mination is nonetheless discretionary and thus barred from judicial review.

 Although the Government's interpretation is a plausible reading of the statutory language, several principles of statutory construction counsel the court to interpret the jurisdiction-stripping language of section 1252 narrowly. First, there must be a showing of " 'clear and convincing evidence' of a contrary legislative intent" to restrict access to judicial review. *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In addition, there is a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Finally, courts construe ambiguities in deportation statutes in favor of the alien. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *see also Iddir v. INS*, 301 F.3d 492, 496–97 (7th Cir.2002) (applying these principles to the gatekeeper provision).

 In this case, the Government offers no "clear and convincing evidence" of legislative intent specifically to restrict access to judicial review of denials of Q–1 visas. Further, because the language of section 1252 supports the Government's interpretation as well as AHA's interpretation, the above mentioned principles of statutory construction guide the court to apply the narrower reading. *See Obioha v. Gonzales*,

431 F.3d 400, 405 (4th Cir.2005) (finding that section 1252(a)(2)(B)(i) should be interpreted narrowly where the narrower interpretation is as likely as the broader interpretation); *Orquera v. Ashcroft*, 357 F.3d 413, 418 (4th Cir.2003) (adopting the "status quo interpretation" of 8 U.S.C. § 1255a(f)(4)(A) rather than the "jurisdiction-stripping interpretation"). Accordingly, the court finds that section 1252(a)(2)(B)(ii) bars judicial review only of determinations of the Attorney General which Subchapter II of the INA *specifies* as being "in his discretion." Had Congress intended to strip from federal courts the power to review "inherently" discretionary decisions of the Attorney General regarding immigration matters, Congress could have made its intent plain. *See McNary v. Haitian Refugee Center*, 498 U.S. 479, 494, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); *Yu v. Brown*, 36 F.Supp.2d 922, 934 (D.N.M.1999). Here, Congress did not do so, and without a clear statement, the court will not find that Congress intended to divest federal courts of such fundamental power. *Evangelical Lutheran Church in America*, 288 F.Supp.2d at 42.

 Applying this narrower interpretation, the court finds that because neither the relevant Subchapter of the INA, nor the Regulations passed pursuant to the INA, specify that the Attorney General's decision to approve Q–1 international cultural exchange programs is "in his discretion," section 1252(a)(2)(B)(ii) does not bar this court from reviewing the Government's denial.[5]

---

**5.** Courts are split as to whether § 1252(a)(2)(B)(ii) bars review of all decisions of the Attorney General specified as discretionary under this Subsection, or only to orders of removal.

Many courts, relying primarily on the fact that § 1252 is titled "Judicial Review of Orders of Removal," have held that this section

only bars review of orders of removal. *See, e.g., Oropeza–Wong v. Gonzales*, 406 F.3d 1135, 1142 (9th Cir.2005); *Evangelical Lutheran Church in America v. I.N.S.*, 288 F.Supp.2d 32, 40 –41 (D.D.C.2003); *Calexico Warehouse, Inc. v. Neufeld*, 259 F.Supp.2d 1067, 1072–75 (S.D.Cal.2002); *Nyaga v. Ashcroft*, 186 F.Supp.2d 1244, 1249 (N.D.Ga.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Government's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED.**

**AND IT IS SO ORDERED.**

2002), *vacated on other grounds,* 323 F.3d 906 (11th Cir.2003); *Talwar v. INS,* 2001 WL 767018, at *3–4 (S.D.N.Y. July 9, 2001); *Mart v. Beebe,* 94 F.Supp.2d 1120, 1124 (D.Or. 2000); *Burger v. McElroy,* 1999 WL 203353, at *4 (S.D.N.Y. Apr. 12, 1999) (noting that defendants "concede" that § 1252(a)(2)(B) only applies when a removal order has been issued).

Certain other courts, most notably the Sixth Circuit, have held that the jurisdictional bar applies to *all* decisions of the Attorney General specified as discretionary under the Subsection, not just final removal orders. *CDI Information Services, Inc. v. Reno,* 278 F.3d 616 (6th Cir.2002); *see also, e.g., Van Dinh v. Reno,* 197 F.3d 427, 432 (10th Cir.1999); *ANA Int'l Inc. v. Way,* 242 F.Supp.2d 906, 921 (D.Or.2002); *Saccoh v. INS,* 24 F.Supp.2d 406, 409–10 (E.D.Pa.1998).

In this case, because the authority for the subject determination was not specified as discretionary, the court does not reach the issue of whether section 1252(a)(2)(B)(ii) bars judicial review of discretionary decisions by the Attorney General that are not orders of removal.