**BEYOND MANAGEMENT,
INC., Plaintiff,**

v.

**Eric HOLDER, Jr., Attorney General
of the United States, et al.,
Defendants.**

**Civil Action No. 1:10–CV–2482–MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 25, 2011.

Charles H. Kuck, Danielle M. Conley, Kuck Casablance LLC, Atlanta, GA, for Plaintiff.

Christopher W. Hollis, United States Department of Justice, Washington, DC, Darcy F. Coty, U.S. Attorney's Office, Atlanta, GA, for Defendants.

## ORDER

MARVIN H. SHOOB, Senior Judge.

This action is before the Court on defendants' motion to dismiss due to lack of subject matter jurisdiction or, in the alternative, for summary judgment. For the following reasons, the Court denies the motion to dismiss and grants the motion for summary judgment.

*Background*

On September 11, 2008, plaintiff Beyond Management, Inc. ("BMI"), a hotel management company, filed Form I–129, Petition for a Nonimmigrant Worker, with United States Citizenship and Immigration Services ("USCIS") Vermont Service Center seeking to be approved as an international cultural exchange program and to obtain Q–1 visas for four named beneficiaries pursuant to Section 101(a)(15)(Q) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(Q). A Q–1 status nonimmigrant alien is defined as "an alien having a residence in a foreign country which he has no intention of abandoning who is coming temporarily (for a period not to exceed 15 months) to the United States as a participant in an international cultural exchange program approved by the Secretary of Homeland Security for the purpose of providing practical training, employment, and the sharing of the history, culture, and traditions of the country of the alien's nationality and who will be employed under the same wages and working conditions as domestic workers." 8 U.S.C. § 1101(a)(15)(Q); 8 C.F.R. § 214.2(q)(2)(i).

On November 3, 2008, USCIS asked BMI "to submit additional evidence that

an international cultural exchange program exists at your location and that the program includes all of the following requirements: (A) Accessibility to the public.... (B) Cultural Component.... (C) Work Component." Admin. R. (Defs.' Mot. to Dismiss, Ex. A) at 377. On December 17, 2008, BMI responded to the request with additional evidence. *Id.* at 375.

By decision dated December 24, 2008, the Director of USCIS Vermont Service Center denied BMI's I–129 petition. The denial noted that all four beneficiaries had been in the United States on J–1 visas training in the hospitality industry with an emphasis on front desk operations and culinary arts. The denial concluded that the beneficiaries were "temporary workers that your organization is attempting to fit into the Q1 visa category," and that the duties they "would primarily be performing would be independent of any claimed cultural exchange program that you claim to have at your organizations [sic] locations." Admin. R. at 34.

On January 21, 2009, BMI filed a timely appeal of the denial of its petition to USCIS's Administrative Appeal Office ("AAO"). By decision dated May 13, 2010, the AAO affirmed the Director's decision and dismissed BMI's appeal. Admin. E. at 1–14. The AAO first found that BMI had failed to show that its program qualified as an international cultural exchange program because it "failed to establish that the beneficiar[ies] would be engaged in employment or training of which the *essential element* is the sharing with the American public, or a segment of the public sharing a common cultural interest, of the culture of the aliens' countries of nationality." *Id.* at 12 (emphasis in original). Second, the AAO found that the Director

had correctly determined that only two of the four beneficiaries, who were all in the United States as J–1 exchange visitors at the time of filing, had obtained waivers of the two-year foreign residency requirement. *Id.* at 12–13.[1] Finally, the AAO found that BMI had failed to provide sufficient documentation supporting the claim that it would offer the beneficiaries wages and working conditions comparable to those given to local domestic workers similarly employed. *Id.* at 13.

On August 9, 2010, BMI brought this action against named government officials pursuant to the Administrative Procedure Act ("APA") asking the Court to declare that the decisions of December 24, 2008, and May 13, 2010, were arbitrary and capricious and in violation of the INA and the APA. Plaintiff asks the Court to reverse or remand this matter to the agency for a decision consistent with the evidence, to award BMI reasonable attorneys' fees and costs, and to grant such other relief as may be just and proper.

Defendants assert that this Court has no jurisdiction to review the discretionary decisions of the Director and the AAO, and that the case should therefore be dismissed. In the event the Court determines that it does have jurisdiction, defendants contend they are entitled to summary judgment on BMI's claims.

*Discussion*

I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants contend that Section 242(a)(2)(B)(ii) of the INA, 8 U.S.C. § 1252(a)(2)(B)(ii), bars this Court from reviewing USCIS's denial of BMI's I–129 petition. That provision states in pertinent part that "no court shall have juris-

---

1. The AAO noted that the other two beneficiaries had obtained waivers after issuance of the Director's decision.

diction to review ... any ... decision of the Attorney General or the Secretary of Homeland Security *the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security* ...." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis supplied). The subchapter to which the statute refers is subchapter II of Chapter 12 of Title 8, 8 U.S.C. §§ 1151–1378. *Zafar v. U.S. Att'y Gen.*, 461 F.3d 1357, 1361 (11th Cir.2006). It therefore includes 8 U.S.C. § 1184, which governs nonimmigrant visa petitions such as the I–129 at issue here.

Section 1184 provides in pertinent part that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General *may* by regulations prescribe...." 8 U.S.C. § 1184(a)(1) (emphasis supplied). Defendants contend that the discretion-granting "may" in the statutory language means that the authority for deciding whether to admit nonimmigrant aliens, including Q–1 status nonimmigrants, is "specified" to be in the discretion of the Attorney General, and that judicial review of such decisions is therefore barred under 8 U.S.C. § 1252(a)(2)(B)(ii).

■ Neither the Eleventh Circuit nor any other circuit has addressed this issue specifically in the context of a Q–1 visa application. However, in *Nat'l Collegiate Recreation Servs. v. Chertoff*, 447 F.Supp.2d 527 (D.S.C.2006), the district court addressed the identical issue presented here. In that case, the court opted for a narrower interpretation of Section 1252(a)(2)(B)(ii), holding that it "bars judicial review only of determinations of the Attorney General which Subchapter II of the INA *specifies* as being 'in his discretion.'" *Id.* at 532 (emphasis in original). The court rejected the government's broader interpretation (the same interpretation defendants urge in this case), which

would have applied the jurisdiction-stripping provision "to all inherently discretionary determinations, not just determinations made pursuant to provisions specified as being within the discretion of the Attorney General." *Id.* at 531, Although "plausible," the court found the government's reading of the statute contrary to principles of statutory construction requiring (1) clear and convincing evidence of legislative intent to restrict access to judicial review, (2) a strong presumption in favor of judicial review of administrative action, and (3) construction of ambiguities in deportation statutes in favor of the alien. *Id.* at 532.

Applying the narrower interpretation, the court found that "because neither the relevant Subchapter of the INA, nor the Regulations passed pursuant to the INA, specify that the Attorney General's decision to approve Q–1 international cultural exchange programs is 'in his discretion,' section 1252(a)(2)(B)(ii) does not bar this court from reviewing the Government's denial." *Id.* (footnote omitted). This Court finds the district court's decision in *Nat'l Collegiate Recreation Servs.* to be well-reasoned and persuasive.

Contrary to defendants' argument, this case is not controlled by the Eleventh Circuit's decision in *Zafar*. In that case, the court held that Section 1252(a)(2)(B)(ii) did not bar court review of an Immigration Judge's decision to deny a motion to continue a removal hearing because authority for that decision was not found in the relevant statutory provisions of the INA, *Zafar*, 461 F.3d at 1360, The court noted several examples of statutorily specified discretionary powers of the Attorney General, including one that, like 8 U.S.C. § 1184(a)(1), does not contain "in his discretion" language but only specifies that the Attorney General "*may* authorize immigration officers" to take certain actions. *Id.* at 1361 (quoting 8 U.S.C. § 1221(c))

(emphasis supplied). The court, however, acknowledged that these statutory provisions "[are] not before us," and concluded that decisions under these statutes would "presumably" not be reviewable by any court. *Id.* Thus, the language on which defendants rely is mere dicta and does not control the decision in this case.

The Court concludes that it has jurisdiction to review defendants' denial of plaintiff's I–129 petition. Therefore, the Court denies defendants' motion to dismiss.

## II. Motion for Summary Judgment

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), The Court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988). "However, even in the context of summary judgment, an agency action is entitled to great deference." *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir.1996).

■ Under the APA, district court review of a visa petition denial is limited to a determination of whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Sunshine Co. Food Distrib., Inc. v. U.S. Citizenship and Immigration Servs.*, 362 Fed. Appx. 1, 2 (11th Cir.2010). The "focal point" of the Court's review "should be the administrative record." *Preserve Endangered Areas of Cobb's History, Inc.*, 87 F.3d at 1246. "The role of the court is not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Id.* (citation omitted), Instead, the court is "to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Id.*, (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)).

In this case, the administrative record fully supports the USCIS's denial of BMI's I–129 petition. Therefore, the Court grants defendants' motion for summary judgment.[2]

■ First, the record supports the finding that BMI failed to establish that its program qualifies as an international cultural exchange program pursuant to 8 C.F.R. § 214.2(q)(3) because it failed to establish that the beneficiaries would be engaged in employment or training of which the essential element is sharing the culture of the alien's country of nationality.[3] The AAO correctly noted that BMI failed to provide "any detailed description of the specific duties to be performed by

---

**2.** In light of this ruling, the Court finds it unnecessary to address defendants' contention that Attorney General Holder is not a proper party to this case.

**3.** The regulation provides in pertinent part:

An international cultural exchange program must meet all of the following requirements:
....
(B) Cultural component. The international cultural exchange program must have a cultural component which is an essential and integral part of the international cultural exchange visitor's employment or training....
(C) Work component. The international cultural exchange visitor's employment or training in the United States may not be independent of the cultural component of the international cultural exchange program. The work component must serve as the vehicle to achieve the objectives of the cultural component....
8 C.F.R. § 214.2(q)(3)(iii).

the four beneficiaries ..., what specific hotel or resort occupations they w[ould] fill ..., [or] the location or locations at which the beneficiaries w[ould] be placed," Admin. R. at 9–10. The AAO also correctly pointed out that evidence in the record showed that "program participants perform the same basic job functions as 'regular' hotel staff, [and that] the cultural aspects of the participants' activities appear to be tangential to their tasks as hotel employees responsible for the day-to-day operations of the front desk and other departments," *Id.* at 10. The AAO correctly noted that BMI had failed to document certain aspects of its claimed cultural program, and that other cultural events that had been documented were "conducted independently from the participants' assigned hotel positions" and occurred only infrequently. *Id.* at 11. Finally, the AAO acknowledged the expert opinion of Dr. Michael Sturman of Cornell University, on which BMI relied, but found that he spoke only in general terms using language that appeared to be derived from BMI's own letters, and that he failed to explain the basis for his opinion or to indicate that he had reviewed the statutory and regulatory requirements pertaining to Q–1 visas.

█ Second, the record supports the finding that two of the four named beneficiaries were not eligible for Q–1 status at the time of the initial denial of the I–129 petition because they were already in the United States and had not yet obtained waivers of the foreign residency requirement.

█ Third, the record supports the AAO's determination that BMI failed to establish that it would offer the beneficiaries wages and working conditions comparable to those accorded local domestic workers similarly employed. The record indicates that BMI intended to pay the beneficiaries a total compensation package valued at $1,155.00 per month. Admin. R.

at 79. At the time of the filing of the petition, however, the federal minimum wage was $6.55 per hour, or $1,222.67 per month, based on a forty-hour work week, Thus, even assuming that comparable local domestic workers received only minimum wage, BMI's proposal failed to meet the law's requirements.

BMI disputes the finding that it failed to specify what the duties of the cultural exchange participants would be. However, BMI fails to provide any citation to the record to support this argument. Moreover, BMI is precluded from disputing this fact because it failed to respond to defendants' Statement of Undisputed Material Facts, which states in part: "Plaintiff's submissions do not describe the *specific duties of the four proposed beneficiaries* for whom it petitioned via the I–129 submitted on or about September 11, 2008," Defs.' Statement of Undisputed Material Facts ¶ 22 (emphasis in original); *see* LR 56.1B(2), NDGa. (absent any response, court will deem each of summary judgment movant's facts as admitted).

BMI also argues that it submitted sufficient documentation of the cultural component of the program, BMI claims that it "provided a list of cultural activities which were carried out by each program participant every day." Pl.'s Opp'n at 17. Once again, however, this argument is not supported by any citation to the record. BMI also argues that it submitted "voluminous evidence" that cultural events actually occurred and that the public were invited to and participated in the events. *Id.* The AAO, however, did not find that cultural events did not occur or that the public were not invited or did not participate. Instead, it found that the documented cultural events occurred only infrequently and were conducted independently from the participants' assigned hotel positions. Admin. R. at 11. BMI has cited no evidence to challenge this finding.

BMI argues that defendants applied the Q–1 visa regulations differently to it as compared to major amusement parks. The Court will not address this claim because BMI did not pursue it administratively. *See Dresser Indus., Inc. v. United States,* 596 F.2d 1231, 1238 (5th Cir.1979) (holding that APA, 5 U.S.C. § 704, imposes an exhaustion of administrative remedies requirement). BMI claims that it did raise this claim at the administrative level, citing its response to USCIS's request for additional evidence. This response, however, consists of hundreds of pages of documents, and BMI provides no specific citation of the document(s) purportedly supporting this claim. The Court notes that BMI's cover letter to its response, which describes the enclosed documentation in some detail, does not mention any claim of disparate treatment. Admin. R. at 374–75.

Finally, BMI argues that the AAO miscalculated the wages it paid to program participants and incorrectly used this as a basis for the denial. BMI cites Part 5 of Form I–129, where it indicated that beneficiaries would receive $7.00/hour plus housing, transportation, and other benefits worth $6,600/year. Admin. R. at 53. BMI, however, fails to explain the inconsistent information submitted in support of the I–129, which indicated that program participants would receive total monthly benefits of $1,155.00 and erroneously stated that this exceeded the minimum wage requirement in Georgia. Admin. R. at 79. BMI also fails to explain its failure to identify the actual locations where the named beneficiaries would be working, information that was essential to determining whether beneficiaries would be employed under the same wages and working conditions as local domestic workers. Its claim that the beneficiaries' work location was the same as BMI's offices in Tucker, Georgia, is clearly disingenuous since it has consistently contended that "the cultural exchange program will take place at several hotels and resorts throughout metropolitan Atlanta, Georgia and South Carolina." Admin. R. at 68.

*Summary*

For the foregoing reasons, the Court DENIES defendants' motion to dismiss [# 7–1], GRANTS defendants' motion for summary judgment [# 7–2], and DISMISSES this action.