United States Court of Appeals,

Eleventh Circuit.

No. 96-8094.

PRESERVE ENDANGERED AREAS OF COBB'S HISTORY, INC., Roger Peaster, Heidi Peaster, Johnny Plunkett, Bury Plunkett, John Mowell and Marie Mowell, Plaintiffs-Appellants,

v.

UNITED STATES ARMY CORPS OF ENGINEERS, Togo D. West, Secretary of the Army, Wayne M. Boy, Colonel, District Engineer, Savannah District Corps of Engineers, Necholus Ogden, Chief, Regulatory Branch, Savannah District Corps of Engineers, United States Environmental Protection Agency, Carol M. Browner, Administrator, John H. Hankinson, Regional Administrator, and Cobb County, Georgia, Defendants-Appellees.

July 11, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-CV-1394-WCO), William C. O'Kelley, Judge.

Before CARNES, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

FAY, Senior Circuit Judge:

The plaintiffs in this action challenged a proposed highway construction project in Cobb County, Georgia. They alleged violations of the Clean Water Act, the National Environmental Policy Act, the Endangered Species Act, and the National Historic Preservation Act. In extremely well-reasoned orders, the District Court dismissed certain claims and granted the defendants summary judgment on all the remaining claims. We affirm.

## I. BACKGROUND

Preserve Endangered Areas of Cobb's History, Inc. (P.E.A.C.H.) and various individuals brought suit to prevent the construction of

---

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

a 4.75 mile highway in Cobb County Georgia. The highway would run through a Historic District in Cobb County and would impact approximately 3.77 acres of wetlands. The County developed a mitigation plan in order to minimize the possible harmful effects of the highway. The plan included the preservation of 19.7 acres of existing wetlands and the restoration of at least 7.8 acres of previously cleared and drained floodplain or wetland area. Cobb County also executed a Memorandum of Agreement on Historic Preservation in order to mitigate the effects on the historic character of the region. The Agreement requires the county to take specific measures. These measures involve limiting access to the road from the historic district, bridging certain roads to minimize the adverse impact on historic properties, aesthetic signage restrictions, site stabilization, archeological data recovery, the stabilization of the Woolen Mills historic structure, and a 70 acre historic heritage park that should minimize future development in and near the historic district.

In April of 1995 the Army Corps of Engineers issued a permit under Section 404 of the Clean Water Act (33 U.S.C. 1344(a)) to Cobb County, authorizing it to impact the 3.77 acres of wetlands. The permit was conditioned on compliance with the Memorandum of Agreement on Historic Preservation and the wetland mitigation plan.

Also in April 1995, the Army Corps District Engineer issued an environmental assessment for the project. The assessment included a finding of no significant impact and concluded that an Environmental Impact Statement would not be required.

The plaintiffs filed suit against Cobb County, the Army Corps

of Engineers, and the Environmental Protection Agency. The plaintiffs alleged that the defendants violated the Clean Water Act (33 U.S.C. §§ 1251 *et seq.*), the National Environmental Policy Act (42 U.S.C. §§ 4321 *et seq.*), the Endangered Species Act (16 U.S.C. §§ 1531 *et seq.*), and the National Historic Preservation Act (16 U.S.C. § 470).

The District Court entered a protective order prohibiting the plaintiffs from engaging in any discovery and limiting the court's review to the administrative record. The District Court granted the defendants' motions to dismiss the claims brought under the citizen suit provisions of the Clean Water Act, ruling that neither the EPA nor the Army Corps of Engineers was subject to suit in this case. Based on the administrative record, the District Court granted the defendants' motions for summary judgment. The plaintiffs appealed.

## II. STANDARD OF REVIEW

The District Court's entry of a protective order must be reviewed for abuse of discretion. *See Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570 (11th Cir.1992).

The court's dismissal of the claims under the citizen suit provisions of the Clean Water Act presents a legal issue, as does the decision to limit review to the administrative record. We review questions of law *de novo. See Bechtel Const. Co. v. Secretary of Labor,* 50 F.3d 926, 931 (11th Cir.1995).

The District Court's order of summary judgment must also be reviewed *de novo. Great Lakes Dredge & Dock Co. v. Tanker,* 957 F.2d 1575, 1578 (11th Cir.), *cert. denied,* 506 U.S. 981, 113 S.Ct.

484, 121 L.Ed.2d 388 (1992). Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence must be viewed in the light most favorable to the non-moving party. *Augusta Iron and Steel Works, Inc. v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). However, even in the context of summary judgment, an agency action is entitled to great deference. Under the Administrative Procedure Act, a court shall set aside an action of an administrative agency where it is arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). The court shall not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971).

## III. ANALYSIS

*A. The District Court did not err when it confined its review to the administrative record and prohibited all discovery.*

The focal point for judicial review of an administrative agency's action should be the administrative record. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). The role of the court is not to conduct its own investigation and substitute its own judgment for the administrative agency's decision. *Volpe,* 401 U.S. at 416, 91 S.Ct. at 823-24. Rather, the "task of the reviewing court is to apply the appropriate ... standard of review ... to the agency decision based on the record the agency presents to the reviewing court."

*Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44, 105 S.Ct. 1598, 1606-07, 84 L.Ed.2d 643 (1985).

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.... The factfinding capacity of the district court is thus typically unnecessary.... [The court is] to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review.

*Id.* at 744, 105 S.Ct. at 1607.

Thus while certain circumstances may justify going beyond the administrative record,[1] a court conducting a judicial review is not "generally empowered" to do so. In the instant case, we find nothing that would necessitate expanding the court's review beyond the administrative record.[2] The record itself adequately explains

---

[1]The Ninth Circuit has specified that a court may go beyond the administrative record only where: 1) an agency's failure to explain its action effectively frustrates judicial review; 2) it appears that the agency relied on materials not included in the record; 3) technical terms or complex subjects need to be explained; or 4) there is a strong showing of agency bad faith or improper behavior. *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436-37 (9th Cir.1988). We need not consider these exceptions as none of them apply in the instant case.

[2]We find no merit in the plaintiffs' contention that there is a dispute as to what actually constitutes the administrative record. According to the plaintiffs, two administrative records were produced by the Corps in this case, and the latter one may have been improperly manufactured. However, only one official, complete administrative record was compiled by the Corps and filed with the court. There is, of course, nothing wrong with an agency compiling and organizing the complete administrative record after litigation has begun from all the files of agency staff involved in the agency action, as long as that record only contains documents considered by the staff prior to the agency action.

the agency's decision and shows that it weighed the relevant factors.[3] The District Court did not err in limiting its review to the administrative record and so did not abuse its discretion by granting a protective order prohibiting any discovery.

*B. The District Court did not err in granting summary judgment.*

Under the Administrative Procedure Act, a court shall set aside an action of an administrative agency only where it is arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). The court shall not substitute its judgment for that of the agency. *Volpe,* 401 U.S. at 416, 91 S.Ct. at 823-24. Plaintiffs contend that the Army Corps acted arbitrarily and capriciously when it: 1) concluded that the project was not unlawfully segmented, 2) issued a Finding of No Significant Impact and so did not prepare an Environmental Impact Statement, and 3) issued a Section 404 permit.

*i. The Army Corps of Engineers was not arbitrary and capricious in finding that the project was not unlawfully segmented.*

The plaintiffs contend that the defendants unlawfully avoided the legal requirement to prepare an Environmental Impact Statement for all major federal actions by analyzing this project alone, and not with the other related projects in Cobb County. It is true that the Corps cannot "evade [its] responsibilities" under the National Environmental Policy Act by "artificially dividing a major federal action into smaller components, each without a "significant' impact." *Coalition on Sensible Transportation, Inc. v. Dole,* 826 F.2d 60, 68 (D.C.Cir.1987). However, just because the

---

[3]The content of the administrative record is discussed further in the next section.

project at issue connects existing highways does not mean that it must be considered as part of a larger highway project; all roads must begin and end somewhere. *Village of Los Ranchos de Albuquerque v. Barnhart,* 906 F.2d 1477, 1483-84 (10th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991).

Under Federal Highway Administration guidelines, in order to be regarded as a stand-alone project, the road must:

> 1) Connect logical termini and be of sufficient length to address environmental matters on a broad scope;
>
> 2) Have independent utility or independent significance, i.e., be usable and be a reasonable expenditure even if no additional transportation improvements in the area are made; and
>
> 3) Not restrict consideration of alternatives for other reasonably foreseeable transportation improvements.

23 C.F.R. § 771.111(f).

The Corps analyzed each of these factors. The road's eastern and western termini are both completed, busy, north-south arterial roads. The Corps concluded that these were logical termini. Moreover, the Corps concluded that the scope of the analysis of the proposed road would not restrict consideration of alternatives. This conclusion was based on a review of the Minutes of the Board of Commissioners for Cobb County, the county transportation studies, maps showing the county's transportation plans, and transportation studies conducted by the county.

However, the "independent utility" factor is by far the most important. "Apparently an inquiry into independent utility reveals whether the project is indeed a separate project, justifying the consideration of the environmental effects of that project alone."

*Piedmont Heights Civic Club, Inc. v. Moreland,* 637 F.2d 430, 440 (5th Cir.1981);[4] *see also Dole,* 826 F.2d at 69 (holding that the "logical terminus" criterion is extremely hard to analyze where a proposed road runs within a single metropolitan area as opposed to running between two cities).

In the instant case, the Corps was not arbitrary and capricious when it determined that the project had independent utility. The Corps required Cobb County to show that the project had independent utility. The county defended the independent utility of the project and supported its position with over fifty exhibits. The new road will take residents of the western part of the county to the commercial activity in the eastern part of the county. According to the county, the highway would be fully operational even if no other roads were built. Some of the east-west roads in the vicinity are already operating at unacceptable levels of service, and the daily traffic volume for most of the roadway systems is expected to at least double by 2010. Based on this information, the Corps found that the road would provide independent utility as a means of transportation from the western residential part of the county to the commercial and employment activities in the east.

The District Court was correct in finding that there are no genuine issues of material fact in this regard, and that the defendants are entitled to judgment as a matter of law: the Army

---

[4]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Corps of Engineers did not act arbitrarily and capriciously when it analyzed the highway as a stand-alone project.

*ii. The Army Corps was not arbitrary and capricious in determining that no Environmental Impact Statement was required.*

The Corps must prepare an Environmental Impact statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). In this case, the Corps concluded that the approval of the project and issuance of a Section 404 permit did not constitute a major federal action. Whether a federal action is "major" or not depends on the significance of the impact on the human environment; "[m]ajor reinforces but does not have a meaning independent of significantly." 40 C.F.R. § 1508.18.

The Corps did consider the project's possible impact on federally protected wetlands:

> The proposed project would impact 3.8 acres of wetlands. The county will undertake a number of control measures to minimize the impacts to wetlands. Cobb County has purchased a tract of land ... for a proposed park. [The county's mitigation plan] identifies 19.7 acres of wetlands to be preserved within Cobb County landholdings. Cobb County also proposed to restore a minimum of 7.8 acres of previously cleared and drained floodplain/wetland area.

Based on this information, the Corps found no significant impact in regard to wetlands, and that an Environmental Impact Statement was not needed in that regard. Although the plaintiffs disagree with the conclusion of the Corps, they can point to nothing that would make the Corps decision arbitrary and capricious. The Corps considered the impact on the wetlands, considered the county's mitigation plan, and reasonably concluded that the impact on wetlands would not be significant.

The plaintiffs also argue that the Corps was obligated to prepare an Environmental Impact Statement because of the project's effect on the historic district. The Corps did identify an adverse impact on the historic district. However, the Corps also considered the county's mitigation plan, and made the Section 404 permit contingent on that plan.

The plan requires the county to take specific measures to mitigate possible impacts on the historic nature of the area. These measures involve limiting access to the road from the historic district, bridging certain roads to minimize the adverse impact on historic properties, aesthetic signage restrictions, site stabilization, archeological data recovery, the stabilization of the Woolen Mills historic structure, and a historic heritage park that should minimize future development in and near the historic district.

Again, the conclusion of the Corps that the project would not significantly affect the historic environment was not arbitrary and capricious. The plaintiffs may disagree with that conclusion, but the Corps considered their arguments, considered the effects on the district, and considered the county's mitigation plan. The conclusion was based on those considerations.

iii. *The Army Corps was not arbitrary and capricious in issuing a Section 404 permit.*

The plaintiffs argue that the Corps acted arbitrarily and capriciously when it granted the Section 404 permit because the project was unlawfully segmented and because the Corps was required to issue an Environmental Impact Statement. Because the Corps did not act arbitrarily and capriciously when it 1) analyzed the road

as a stand-alone project, and 2) did not prepare an Environmental Impact Statement, it did not act arbitrarily and capriciously when it issued a Section 404 permit.

*C. The District Court did not err in dismissing the claims brought under the citizen suit provision of the Clean Water Act.*

Under the Clean Water Act, 33 U.S.C. § 1344, the Army Corps of Engineers is authorized to regulate the discharge of dredged or fill material into U.S. waters, including wetlands. The actions of the Corps must be based on EPA guidelines, and the Administrator of the EPA may overrule certain decisions of the Corps. Under 33 U.S.C. § 1365(a)(2), a citizen can sue the Administrator "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary ..."

The United States must expressly and unambiguously waive its sovereign immunity before it can be sued. *See United States v. Idaho ex rel. Director, Idaho Dept. Of Water Resources,* 508 U.S. 1, 6, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (1993). Any statutory provisions allowing suits against the United States must be construed strictly. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685-86, 103 S.Ct. 3274, 3277-78, 77 L.Ed.2d 938 (1983).

Section (a)(2) of the citizen suit provision of the Clean Water Act does not clearly and ambiguously waive sovereign immunity in regard to the Army Corps of Engineers. The statute states that a citizen can sue "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary ..." 33 U.S.C. § 1365(a)(2). It does not refer to the Army Corps of Engineers. We must conclude that Congress did not intend to waive sovereign immunity in regard to

suits against the Army Corps of Engineers under the Clean Water Act.[5]

The Clean Water Act does allow suits against the Administrator of the EPA where there is alleged a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary ..." However, the decision of the Administrator not to overrule the decision of the Army Corps is discretionary. The Administrator is "authorized to prohibit" and "authorized to deny or restrict the use of any defined area for specification." 33 U.S.C. § 1344(c). Thus the Administrator has the authority to overrule the Corps. The EPA views this authority as discretionary. In regulations adopted pursuant to the statute, the Regional Administrator "may" initiate certain actions if he believes that an "unacceptable adverse effect" could result. 40 C.F.R. § 231.3(a). We agree with the EPA that this power is discretionary. By statute, the Administrator is authorized rather than mandated to overrule the Corps. 33 U.S.C. § 1344(c). Because this power is discretionary, the citizen suit provision of the Clean Water Act does not apply.

The plaintiffs argue that this interpretation of the statute renders the citizen suit provision of the Clean Water Act

_____

[5]In *National Wildlife Federation v. Hanson,* 859 F.2d 313 (4th Cir.1988), the Fourth Circuit held that a suit against the Corps under 33 U.S.C. § 1365(a)(2) was valid because the Corps' duty is nondiscretionary, and the EPA Administrator is ultimately responsible for the protection of wetlands. According to the Fourth Circuit, "Congress cannot have intended to allow citizens to challenge erroneous wetlands determinations when the EPA Administrator makes them but to prohibit such challenges when the Corps makes the determination and the EPA fails to exert its authority over the Corps' determination." *Hanson,* 859 F.2d at 316. We most respectfully disagree.

meaningless for Section 404 permit decisions; in a case such as this, neither the Corps nor the Administrator can be sued under the Clean Water Act. However, the Supreme Court has stressed that a court's role in interpreting a statute is limited: "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain,* 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149-50, 117 L.Ed.2d 391 (1992).

## IV. CONCLUSION

We conclude that the District Court applied the correct rules of law and the appropriate standards when it limited its review to the administrative record, when it granted summary judgment, and when it dismissed the claims based on the citizen suit provision of the Clean Water Act. The judgment is AFFIRMED.