Raquel Pascoal WILLIAMS, Plaintiff,

v.

SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY and Director of U.S. Citizenship and Immigration Services, Defendants.

Case No. 6:12–cv–701–Orl–36KRS.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 27, 2013.

Brent W. Renison, Parrilli Renison LLC, Portland, OR, David Stoller, Law Offices of David Stoller, PA, Orlando, FL, for Plaintiff.

John Inkeles, U.S. Department of Justice, Washington, DC, for Defendants.

### ORDER

CHARLENE EDWARDS HONEYWELL, District Judge.

This cause comes before the Court upon cross motions for summary judgment. Plaintiff Raquel Pascoal Williams ("Plaintiff") filed a Motion for Summary Judgment ("Plaintiff's Motion") (Doc. 9). Defendants Janet Napolitano ("Defendant Napolitano"), Secretary, United States Department of Homeland Security ("DHS"), and Alejandro Mayorkas, Director, United States Citizenship and Immigration Services ("USCIS") (collectively, "Defendants") filed a Response in Opposition to Plaintiff's Motion for Summary Judgment

and concurrently moved for summary judgment ("Cross Motion") (Doc. 14). Plaintiff filed a Response in Opposition to Defendants' Cross Motion for Summary Judgment (Doc. 19). Having determined that oral argument is unnecessary, Plaintiff's Motion and Defendants' Cross Motion are ripe for review. Upon consideration of the parties' submissions, pertinent law, and for the reasons that follow, the Court finds that Defendants are entitled to summary judgment.

## I. BACKGROUND

### A. Material Facts [1]

Plaintiff is a Brazilian citizen residing in Orlando, Florida. Doc. 1, ¶ 7; Doc. 14, p. 2. On January 11, 2002, Plaintiff married Derek Williams ("Williams"), a U.S. citizen. *Id.* at ¶ 10; *see* Doc. 14–Ex. 1, p. 2.[2] On December 19, 2002, Williams filed the Form I–130, Petition for Alien Relative ("I–130 Petition"), and Plaintiff filed the Form I–485, Application to Register Permanent Resident or to Adjust Status ("I–485 Application"), relying upon the I–130 Petition to adjust her status to achieve permanent residency. *Id.* at ¶ 11; Doc. 14–Ex. 1, pp. 4–6. Plaintiff was assigned an Alien Number and was issued an Employment Authorization Document and an Advance Parole Travel Document. *Id.* Plaintiff gave birth to the couple's son in 2003. *Id.* at ¶ 12. On September 17, 2003, Williams died. *Id.* at ¶ 13; Doc. 14–Ex. 1, p. 24.

On December 23, 2003, USCIS denied Plaintiff's I–485 Application. *See* Doc. 14–Ex. 6 ("Decision on I–485 Application"). USCIS stated that because Williams died

---

1. The facts are determined from the Plaintiff's Complaint (Doc. 1) in conjunction with the Undisputed Facts listed in Defendants' Cross Motion and accompanying exhibits (Doc. 14). The Court cites where facts are undisputed, and otherwise determines facts based upon the record before the court.

2. In conjunction with their Cross Motion, Defendants submitted seventeen exhibits in one large PDF. *See* Doc. 14–Ex. 1. The Court will cite to the exhibits by PDF page number, as opposed to exhibit number.

on September 17, 2003, Plaintiff would no longer be classified as the immediate relative of a U.S. citizen. *Id.* USCIS informed Plaintiff that it would take no further action with respect to the I–130 Petition filed by Williams and concluded that Plaintiff was ineligible to adjust her status because she could not show that she had an immediately available immigrant visa. *Id.*

On July 16, 2004, Plaintiff filed a petition to be categorized as a widow of a U.S. citizen. *See* I–360 Petition, Doc. 14–Ex. 1, pp. 29–32. Plaintiff represented that she was the widow of a U.S. citizen who had died within the past two years. Plaintiff listed her one-year-old son with Williams, and attached a letter from Williams' parents in support of her application. Doc. 14–Ex. 1, pp. 34–35.

On March 15, 2005, USCIS denied Plaintiff's application to be classified as a widow of a U.S. citizen. *See* Notice of Denial, Doc. 14–Ex. 1, at 37–38. USCIS noted that, pursuant to 8 C.F.R. § 204.2, a beneficiary must have been married to a U.S. citizen for at least two years prior to the citizen's death to be classified as a widow. *Id.* Accordingly, because Plaintiff was not married to Williams for at least two years, USCIS stated it must deny the petition. *Id.*

On August 8, 2009, Plaintiff married Noel Wells ("Wells"). They separated on November 5, 2009 and divorced on April 12, 2010. *See* Doc. 14–Ex. 1, pp. 40–42.

On May 26, 2010, Plaintiff moved to reopen the I–130 and I–485 that Williams filed on her behalf. *See* Form I–290B, Notice of Appeal ("Plaintiff's Appeal"), Doc. 14–Ex. 1, pp. 44–45. In Plaintiff's Appeal, she argues that the recently enacted Immigration and Nationality Act ("INA") section § 204(*l*), 8 U.S.C. § 1154(*l*) "provides for the reopening of denied I–130 and I–485 applications where

the death of the qualifying relative occurred prior to October 28, 2009." *Id.* Plaintiff included an Affidavit of Support from Williams' mother, Linda Williams. *Id.* at 47–48.

On March 22, 2011, USCIS denied Plaintiff's Appeal, noting that Plaintiff was married to Williams from January 11, 2002 until his death on September 17, 2003. *Id.* at 49. Also, USCIS noted Plaintiff's marriage to Wells from August 8, 2009 to April 12, 2010. *Id.* USCIS cited its December 16, 2010 Policy Memorandum ("2010 US-CIS Memo") stating that "A widow(er)'s eligibility for adjustment ends if the widow(er) remarried before obtaining LPR [3] status." Because of her subsequent marriage to Wells, USCIS considered her a divorcee and not a widow, and denied Plaintiff's Appeal. *Id.*

On August 17, 2011, Plaintiff filed an application to adjust her status. *See* I–485, Doc. 14–Ex. 1, pp. 51–56. In her I–485 Application, Plaintiff represented that an immigrant petition giving her an immediately available immigrant visa number had been approved. *Id.* at 51. Plaintiff did not list a current spouse, but indicated that she had been married twice, to Williams from January 11, 2002 to September 17, 2003, and to Wells from August 8, 2009 to April 12, 2012. *Id.*

On February 23, 2012, USCIS denied Plaintiff's I–485 Application to adjust her status. *See Id.* at 60–61. USCIS explained that Plaintiff did not fulfill the eligibility requirements required to become a permanent resident as the surviving spouse of a U.S. citizen. *Id.* USCIS noted that Congress passed Public Law 111–83 on October, 28, 2009, amending the eligibility requirements for surviving spouses of deceased U.S. citizens. *Id.* at 60; *see* Public Law 11–83, 123 Stat. 2142, 2187–88 (2009). The amended provisions

---

**3.** "LPR" is an acronym for lawful permanent resident.

provide a path to permanent residency if: (i) the alien's U.S. citizen spouse died prior to the enactment of the act; (ii) the alien and the citizen spouse had been married for less than two years at the time of the citizen's death; and (iii) the alien has not remarried. *Id.* at 61; Pub. Law. 111–83, § (c)(2)(B). Therefore, the USCIS concluded that Plaintiff was not eligible to adjust her status because her last marital status is considered to be divorced under either INA § 204(*l*), 8 U.S.C. § 1154(*l*), or section (c)(2)(B) of Public Law 111–83. In addition, USCIS revoked Plaintiff's employment authorization and terminated any advance parole. *Id.* at 61.

### B. Procedural History

On May 9, 2012, Plaintiff filed a Complaint seeking Declaratory and Injunctive Relief and a Petition for Writ of Mandamus against Defendants. Doc. 1. Less than two months later, the instant cross motions for summary judgment ensued. Docs. 9, 14.

## II. *STANDARD*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1259–60 (11th Cir.2004). That burden can be discharged if the moving party can show the

court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. 2548. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248–49, 106 S.Ct. 2505 (emphasis in original). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161 (11th Cir.2003).

## III. *ANALYSIS*

### A. Scope of the Court's jurisdiction and review

Although neither party contests the Court's jurisdiction, the Court must examine the scope of its own jurisdiction over this immigration related matter. *See* Fed. R.Civ.P. 12(h)(3); *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

 With respect to the permitted forms of judicial review under the INA, the Court has subject matter jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA").[4] The APA

---

**4.** Pursuant to 8 U.S.C. § 1252(g), this Court lacks jurisdiction over an immigration "decision or action" to "commence proceedings,

adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g); *Reno v. American–Arab*

provides that agency actions, findings, and conclusions can be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *Diaz v. USCIS*, 499 Fed.Appx. 853, 855–56 (11th Cir.2012). This standard is "exceedingly deferential." *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir.1996). "[T]he arbitrary and capricious standard gives an appellate court the least latitude in finding grounds for reversal," and administrative decisions "should be set aside in this context … only for substantial procedural or substantive reasons as mandated by statute, … not simply because the court is unhappy with the result reached." *North Buckhead Civic Ass'n. v. Skinner*, 903 F.2d 1533, 1538–39 (11th Cir. 1990). Also, the focal point for judicial review of an administrative agency's action is the administrative record. *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs.*, 87 F.3d 1242, 1246 (11th Cir.1996). The reviewing court does not "conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Id.* Instead, the court "decide[s], on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Id.*

The Court reviews an agency's construction of a statute which it administers with the established principle of deference. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the Court asks whether Congress has directly spoken to the precise question at issue. Second, if the statute is silent or ambiguous with respect to the issue, the Court will determine whether the agency's reading is based upon a permissible construction of the statute. *Id.* at 843, 104 S.Ct. 2778.

### B. Legal framework for noncitizen spouses of deceased U.S. citizens

Prior to 2009, no immigration relief existed for the surviving spouse of a U.S. citizen if they were married for less than two years at the time of the U.S. citizen's death, and either the immigrant petition filed by the citizen on behalf of the spouse was not filed or had not been adjudicated by the time of the U.S. citizen's death. Doc. 14, p. 15; 8 C.F.R § 205.1(a)(3)(i)(C).

In 2009, Congress changed the law, permitting the approval of a visa petition if the alien seeking the benefit resided in the United States when the qualifying relative died, and continues to live in the United States. INA § 204(*l*); 8 U.S.C. § 1154(*l*). Under the new law, the alien must also show that "immediately prior to the death of his or her qualifying relative" they were "the beneficiary of a pending or approved petition for classification as an immediate relative." 8 U.S.C. § 1154(*l*). Importantly, a spouse's status as an "immediate relative" terminates when the spouse remarries. 8 U.S.C. § 1151(b)(2)(A)(i). Similarly, Public Law 111–83 states that an alien must not have been remarried in order to adjust his or her status based on the visa application of the deceased spouse.

The 2010 USCIS Memo detailed the agency's intentions for implementing the 2009 revision to 8 U.S.C. § 1154(*l*). Doc. 14, p. 17. USCIS recognized that the law

*Anti–Discrimination Comm.*, 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999); *Rosas v. U.S. Citizenship & Immigration Servs.*, 2006 WL 3231426, *2 (M.D.Fla.2006). The Eleventh Circuit reiterates that challenges to the government's decision to remove an individual are not subject to judicial scrutiny. *De La Teja v. U.S.*, 321 F.3d 1357, 1365 (11th Cir.2003). Review of all final removal orders is properly with the Courts of Appeal. 8 U.S.C. § 1252.

changed to allow a beneficiary of a visa petition to obtain approval where the petitioner died while the petition was pending. *See* Doc. 14–Ex. 1, at 63–7. Additionally, the 2010 USCIS Memo confirmed that a widow's eligibility for adjustment ends if the widow remarried before obtaining LPR status. *Id.*

### C. Plaintiff's Mandamus Action

Plaintiff argues that she is eligible for adjustment of status pursuant to 8 U.S.C. § 1154(*l*), and that the remarriage bar in the second sentence of 8 U.S.C. § 1151(b)(2)(A)(i) does not apply to her.[5] Doc. 9, pp. 8–10. The parties agree that following the 2009 amendment, widows who were married less than two years at the time of the U.S. citizen spouse's death were eligible for adjustment.[6] *Id.* at 9, n. 2; Doc. 14, p. 20. Indeed, Defendants state that pursuant to the 2009 amendment, "Ms. Williams would have been eligible to adjust her status had she not married for a second time in 2009." Doc. 14, p. 20.

Plaintiff argues that the language of 8 U.S.C. § 1151(b)(2)(A)(i) is divided into two parts, and that the second part does not modify the first. Doc. 9, p. 10. That statute provides:

> (2)(A)(i) **Immediate relatives.** For purposes of this subsection, the term "immediate relatives" means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the United States and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered,

for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries.

8 U.S.C. § 1151(b)(2)(A)(i)/INA § 201(b)(2)(A)(i). First, Plaintiff argues that prior to the 2009 amendment, some courts found that the two-year marriage requirement in the second sentence applied only to aliens whose U.S. citizen spouses did not initiate an adjustment of status before they died. *Id.* Therefore, Plaintiff argues that since the two-year limitation was sometimes read not to modify the first sentence's definition of immediate relatives, that the limitation on remarriage in the second sentence similarly does not modify the first sentence.

Second, Plaintiff argues that there is no remarriage bar directly within 8 U.S.C. § 1154(*l*), and by focusing on the petitioner's marriage status at the time of the U.S. citizen spouse's death, the text does not indicate an intent to import the remarriage bar from the self-petitioning provisions of 8 U.S.C. § 1151(b)(2)(A)(i). *Id.* at 11. Third, Plaintiff argues that USCIS' denial of Plaintiff's Appeal violated the section governing construction of 8 U.S.C. § 1154(*l*), which provides that "[n]othing in the amendment made by paragraph (1) may be construed to limit or waive any ground of removal, basis for denial of petition or application, or other criteria for adjudicating petitions or applications as otherwise provided under the immigration laws of the United States other than ineligibility based solely on the lack of a qualifying family relationship as specifically

---

**5.** INA § 204(*l*) is equivalent to 8 U.S.C. § 1154(*l*).

**6.** The parties disagree as to whether Plaintiff would have had any avenue for relief prior to

the 2009 amendment. *See* Doc. 19, pp. 2–3. The Court need not determine the validity of Plaintiff's petition for adjustment of status prior to the 2009 amendment.

provided by such amendment." P.L. 111–83, Title V, § 568(d)(2).

In their Cross Motion, Defendants argue that the 2009 amendment did not permit alien widows of U.S. citizens who have subsequently remarried to adjust their status based on their marriage to the deceased U.S. citizen. Doc. 14, pp. 22–24. Specifically, Defendants argue that Plaintiff's reading of the two sentences in 8 U.S.C. § 201(b)(2)(A)(i) as unrelated and not limiting Plaintiff's right to adjustment of status is incorrect and clearly contrary to congressional intent. *Id.* at 23. To the contrary, Defendants maintain that the plain language of 8 U.S.C. § 201(b)(2)(A)(i) indicates that Plaintiff ceased being an "immediate relative" of Williams when she married Wells. *Id.; see* 8 U.S.C. § 201(b)(2)(A)(i). While the first sentence describes who may be classified as an "immediate relative" of a U.S. citizen, the next sentence details conditions for when that individual can remain an immediate relative. The Defendants maintain that, like all people, Plaintiff is limited to being the "immediate relative" of just one spouse, and that this statute, contrary to Plaintiff's reading, clearly removes remarried spouses from its ambit. *Id.* at 24.

Second, Defendants disagree with Plaintiff's interpretation of this statute as only relating to spouses who file petitions after the death of their U.S. citizen spouses. *Id.* at 25. Defendants concede that the construction of the statute, providing two years for an alien spouse to petition following the death of their U.S. citizen spouse, clearly does not exempt Plaintiff just because Williams submitted the petition on her behalf before his death.

Finally, Defendants maintain that Plaintiff's argument that there is no remarriage bar within 8 U.S.C. § 1154(*l*) itself is meritless. *Id.* (citing Doc. 9, pp. 10–11). That subsection defines its scope explicitly to an alien as defined in 8 U.S.C. § 1151(b)(2)(A)(i). Essentially, Defendants contest Plaintiff's reading of the statute as creating a permanent right to adjust based upon a timely filed visa petition from a first marriage. *Id.* at 27.

■ Upon consideration, the Court agrees with Defendants that the plain construction of 8 U.S.C. § 1151(b)(2)(A)(i) explicitly limits an alien widow's right to acquire immigration benefits based on a first marriage after the widow has remarried. 8 U.S.C. § 1151(b)(2)(A)(i). Plaintiff's argument that she still qualifies as an immediate relative of Williams, and that the second sentence of § 1151(b)(2)(A)(i) does not modify the first, is unpersuasive. Indeed, none of the cases Plaintiff cites in support of her argument that the second sentence of this subsection does not modify the first were applied to the remarriage bar. *See, e.g. Taing v. Napolitano,* 567 F.3d 19, 26–27 (1st Cir.2009) (holding that petitioner retained her status as a "spouse" after her husband died in order to qualify as an "immediate relative") [7]. For example, Plaintiff's citation to *Goeller v. Lorence,* a case involving paternity and custody issues as opposed to interpretation of immigration law, is irrelevant to the statutory interpretation at issue.[8] 2006 WL 3159406 (Ohio Ct.App.2006).

---

**7.** Although the First Circuit does distinguish between the first and second sentences of 8 U.S.C. § 1151(b)(2)(A)(i), it finds that the first sentence contemplates the situation where the U.S. citizen spouse filed an I–130 prior to his or her death, and the second sentence addresses the situation of an alien spouse whose husband or wife died before filing an I–130 petition. *Taing,* 567 F.3d at 26–27. This case, along with *Freeman v. Gonzales,* 444 F.3d 1031 (9th Cir.2006), finds that this subsection establishes the right to self-petition to a select group of alien widows as an *alternative* to their spouse's I–130 filing. 444 F.3d at 1042, n. 17.

**8.** The *Goeller* court consults Black's Law Dictionary in concluding that the definition of a

Second, the fact that 8 U.S.C. § 1154($l$) explicitly refers to the definition of "immediate relative" as defined in section 1151(b)(2)(A)(i), precludes the possibility that the definition does not apply, as Plaintiff posits. Indeed, the statutory framework explicitly limits an alien's right to adjustment if they remarry. Plaintiff's interpretation would permit her, even after a divorce from Wells after ten years, to revert to an adjustment of status based upon Williams' prior pending I-130 application. The Court will not read such a construction into the text.

Therefore, the Court will grant Defendants' Cross Motion, as no genuine issues of material fact exist and there is an absence of evidence to support Plaintiff's Complaint for Declaratory and Injunctive Relief and Petition for Writ of Mandamus. Defendants are entitled to a judgment in their favor as a matter of law.

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1. Plaintiff Raquel Pascoal Williams' Motion for Summary Judgment (Doc. 9) is **DENIED.**

2. Defendants' Cross Motion for summary judgment (Doc. 14) is **GRANTED.**

3. The Clerk is directed to terminate any pending motions and deadlines as moot, enter judgment in favor of Defendants, and close this case.

"surviving spouse" is one who outlives the other spouse, and that this status is permanent, regardless of remarriage. *Goeller,* 2006 WL 3159406, *2. The issue before this Court is the correct interpretation of the remarriage penalty in the immigration statute, 8 U.S.C. § 1151(b)(2)(A)(i). Thus, neither this case, nor other cases cited by Plaintiff, which do not interpret this statutory provision, are relevant.